No. 51,721

YVONNE NUNN, *Petitioner*, v. ROBERT L. MORRISON, Judge of the Eighteenth Judicial District; KANSAS DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES; KATHY ARING; JOSE A. HERNANDEZ; LORENDA HERNANDEZ; NORA HERNANDEZ; and VERN MILLER, District Attorney of the Eighteenth Judicial District, *Respondents.*

(608 P.2d 1359)

Opinion filed April 5, 1980.

*Randall Fisher,* of Legal Aid Society of Wichita, Inc., argued the cause and *David Gray* and *Michael Morgan,* of the same association, were with him on the brief for the petitioner.

*Robert R. Hiller, Jr.,* of Wichita, and *Reid Stacey,* assistant attorney general, argued the cause and *Robert T. Stephan,* attorney general, was with them on the brief for respondents.

The opinion of the court was delivered by

HERD, J.: This is an original action in mandamus brought by petitioner Yvonne Nunn against respondents Judge Robert Morrison, the Kansas Department of Social and Rehabilitation Ser-

vices, Kathy Aring, Jose Hernandez, Lorenda Hernandez, Nora Hernandez and Vern Miller. She seeks an order compelling Judge Morrison to allow her access to the "social file" maintained in the juvenile court records in the district court below for purposes of the deprived child proceeding involving her children.

The facts of this case are undisputed. Petitioner Yvonne Nunn, a resident of Wichita, is the natural mother of Lorenda and Nora Hernandez. Lorenda and Nora are the subjects of a deprived child proceeding currently pending in the district court of Sedgwick County, Kansas, Eighteenth Judicial District, Juvenile Department, captioned "In the Interest of Lorenda Hernandez and Nora Lynn Hernandez." Yvonne Nunn was served with a petition in the action alleging she knew of certain allegedly abusive conduct committed against the children by her now estranged husband Donald Nunn. The petition alleged she had failed to protect the children from such abuse. She, Donald Nunn and the children's natural father Jose Hernandez were summoned to appear at the proceeding.

On December 3, 1979, Judge Morrison considered petitioner's motion to inspect the juvenile court file commonly referred to as the "social file." The social file in the juvenile case, kept separate from official court records, contains various psychological reports, evaluations made by social workers, police reports, and other correspondence regarding the two children. At the hearing, Judge Morrison reviewed the file and made a ruling generally denying petitioner access with the exception of certain portions of the file. This original action followed that denial of access. The parties have presented two issues. The first is whether mandamus is an appropriate remedy in this case.

K.S.A. 60-801 provides:

"Mandamus is a proceeding to compel some inferior court, tribunal, board, or some corporation or person to perform a specified duty, which duty results from the office, trust, or official station of the party to whom the order is directed, or from operation of law."

In *Cropp v. Woleslagel,* 207 Kan. 627, 628, 485 P.2d 1271 (1971), this court stated:

"[M]andamus will be invoked only when an order of the trial court denies a litigant a right or privilege which exists as a matter of law and there is no remedy by appeal."

Petitioner requests this court to compel the trial court to allow

her access to certain evidence which has been revealed to the other party to the action. With respect to the use of mandamus as a discovery tool, we are referred to *Muck, Administratrix v. Claflin,* 197 Kan. 594, 419 P.2d 1017 (1966). In that case, this court directed a trial court to set aside its order compelling the plaintiff to disclose certain information on a set of interrogatories regarding limits of liability insurance. We discussed at length the purpose of discovery and its importance to the preparation of a case. Mandamus was granted, but not on the grounds of easing discovery at trial. We adhered to the established rule that mandamus will be invoked only when a right exists and there is no remedy by appeal. In that case, the court held that the party did not have a remedy as a matter of law, such as the right to appeal, because if she were forced to reveal the information sought, such a disclosure would be irreparably fixed in the mind of any interested party and appeal would not correct that error. Indeed, in *Cropp v. Woleslagel,* 207 Kan. at 628, we discouraged the use of mandamus as a remedy for adverse discovery rulings, stating:

"This court does not propose to undertake the task of monitoring trial courts at the pretrial or discovery stage of litigation or of rendering advisory opinions whenever the propriety of pretrial inquiry arises."

Notwithstanding these rulings, we hold mandamus is a proper remedy in this case. Here, petitioner is a party to a deprived child proceeding in which custody of her children are at issue. A good part of the proceeding originated pursuant to the reports and evaluations contained within the social file in question. It was also shown that petitioner's adversaries were allowed to fully examine and photocopy the social file, while she was denied an opportunity to examine the entire file. In *Mobil Oil Corporation v. McHenry,* 200 Kan. 211, 243, 436 P.2d 982 (1968), this court stated:

"It has been said that mandamus will not lie at the instance of a private citizen to compel the performance of a public duty; that such a suit must be brought in the name of the state, and the County Attorney and the Attorney General are the officers authorized to use the name of the state in legal proceedings to enforce the performance of public duties. Where, however, an individual shows an injury or interest specific and peculiar to himself, and not one that he shares with the community in general, the remedy of mandamus and the other extraordinary remedies are available." [Citations omitted.]

"Whether or not a private individual has brought himself within the narrow limits of the well-established rule must be determined from the particular facts of each individual case."

Here, we are informed by counsel, Judge Morrison has ceased to allow parents in deprived child proceedings to view the social file received by the juvenile court. It is clear petitioner suffers a specific injury peculiar to her status as parent. In addition, we find her remedy at law, that of appeal, is severely limited as a great deal of the case depends upon the contents of the social file, to which her adversaries have access. We find there is a clear duty on the part of Judge Morrison to furnish petitioner with access to the social file. Mandamus is, therefore, an appropriate remedy in this instance. By our ruling, we do-not intend to open all questions of discovery to piecemeal review. We find, however, that the facts in this case warrant the granting of petitioner's request for mandamus.

The second issue raised by the parties is whether petitioner has been deprived of a legal right which entitles her to an order in mandamus compelling Judge Morrison to allow plaintiff access to the social file.

The statute in question in this case is K.S.A. 1979 Supp. 38-805, which states:

"(a) The record in the district court for proceedings pursuant to the Kansas juvenile code shall consist of the petition, process and the service thereof, orders and writs, and reports and evaluations received or considered by the court. Such documents shall be recorded and kept by the court, separate from other records of the court.

"(b) All records, files or other information maintained, obtained or prepared by any officer or employee of the district court in connection with proceedings under the Kansas juvenile code shall be privileged and shall not be disclosed, directly or indirectly, to anyone except:

"(1) A judge of the district court and members of the staff of the court designated by a judge of the district court;

"(2) parties to the proceeding and their counsel;

"(3) a public or private agency or institution providing supervision or having custody of the child under court order;

"(4) to any other person when authorized by a judge of the district court, subject to any conditions imposed by the judge; or ‗

"(5) a court in which such person is convicted of a criminal offense for the purpose of a presentence report or other dispositional proceeding, officers of penal institutions and other penal facilities to which such person is committed or a parole board considering such person's parole or discharge or exercising supervision over such person.

"(c) In order to properly advise the three branches of government on the operation of the juvenile justice system, each district court shall furnish the judicial administrator such information regarding juveniles coming to the atten-

tion of the court pursuant to the Kansas juvenile code as is determined necessary by the secretary of social and rehabilitation services and the director of the governor's committee on criminal administration, on forms approved by the judicial administrator."

Plaintiff contends she is a party within the meaning of K.S.A. 1979 Supp. 38-805(*b*)(2) and the trial court is required to disclose the records to her. Respondents argue the parties to the proceeding are only those named in the caption of the case, *i.e.*, "In the Interest of Lorenda Hernandez and Nora Lynn Hernandez." That logic would appear to exclude anyone who is not Lorenda or Nora Lynn, including members of the district attorney's office, who were allowed to view the file.

It is clear to this court petitioner is a party to the deprived child proceeding. She was served with a petition and summons in the action. If she had failed to appear, without reasonable cause, she could have been in contempt of court. K.S.A. 1979 Supp. 38-810a(*e*). Numerous other statutes throughout the juvenile code further illustrate her party status. A parent may not be deprived of his or her parental rights in a deprived child proceeding unless the parent is represented by counsel and unless the court may enter a child custody determination pursuant to K.S.A. 1978 Supp. 38-1303. K.S.A. 1979 Supp. 38-820. A natural parent is authorized to transfer the deprived child proceedings "to the court of the county where the child is physically present or where the parent or parents reside." K.S.A. 1979 Supp. 38-812. The trial court must summon and give notice of the time and place of the deprived child hearing to "the child and the parent, guardian or other person having legal custody of such child or if there be none then some relative or other interested person, if there be one." K.S.A. 1979 Supp. 38-817(*a*). The parents have the right to appeal from any final order made on behalf of the child. Those persons having the right to appeal are termed "parties." K.S.A. 1979 Supp. 38-834(*b*)(*d*)(*e*). The parents could be made liable for the costs of the care of the allegedly deprived child, prior to or during the pendency of the deprived child action. K.S.A. 1979 Supp. 38-828. The parent could also be liable for court costs and witness fees. K.S.A. 1979 Supp. 38-817(*b*). Finally, we note with approval the following statement from 47 Am. Jur. 2d, Juvenile Courts, Etc. § 37, p. 1014:

"The word 'party,' as generally used in connection with persons who are

involved in juvenile court proceedings, does not ordinarily connote an adversary party such as the plaintiff or defendant in proceedings in other courts. It has been said that a person having custody of the juvenile, or a parent or guardian of such child, is a party to proceedings in juvenile court in the sense that he or she has the right to appear and give testimony, to be represented by counsel, to call witnesses, and to cross-examine witnesses."

From the foregoing, we conclude it is clear petitioner is a party to the proceeding.

We must determine whether the language in K.S.A. 1979 Supp. 38-805 is mandatory or discretionary. A review of the statute's legislative history will reveal the answer.

K.S.A. 38-805, originally enacted in 1957, provided as follows:

"(a) The record in the juvenile court shall consist of the petition, process and the service thereof, orders and writs, and such documents shall be recorded in books kept by the juvenile court for such purpose.

"(b) The official records of the juvenile court shall be open to inspection only by consent of the juvenile court judge, or upon order of a judge of the district court, or upon order of the supreme court.

"(c) All information obtained and records prepared by any employee of the juvenile court shall be privileged, and shall not be disclosed, directly or indirectly, to anyone other than the juvenile court judge or others entitled under this act to receive such information, unless and until otherwise ordered by such judge."

The statute was amended in 1976. L. 1976, ch. 207, § 5. The changes generally reflected court unification and also substituted the words "district court" for "juvenile court." The 1978 amendments took away the total discretion of the judge regarding inspection of court records pertaining to juveniles and enacted what are now sections (*b*), (1) through (5). L. 1978, ch. 158, § 2. The 1979 amendments added what is now section (*c*), which requires the district court to furnish certain information regarding juveniles to the judicial administrator. L. 1979, ch. 124, § 1.

In *Shawnee Township Fire District v. Morgan,* 221 Kan. 271, 278, 559 P.2d 1141 (1977), this court stated:

"[I]t is a fundamental rule of law that a change in phraseology or the deletion of a phrase in amending or revising a statute raises a presumption that a change of meaning was also intended . . . ."

We find the 1978 amendments reflect a legislative intent to depart from the former statute granting a trial court total discretion. The current statute lists certain parties who are to have access to the social file. This conclusion is also clear from a reading of the

statute itself. K.S.A. 1979 Supp. 38-805(*b*)(4) provides the trial court may, in its discretion, allow certain persons to have access to the file. A common-sense interpretation of the statute would not find provisions (1), (2), (3) and (5) discretionary as well, when the legislature clearly enacted a specific provision for trial court discretion.

The final aspect of the operation of this statute must include a reconciliation of the possible conflict between K.S.A. 1979 Supp. 38-805 and K.S.A. 1979 Supp. 38-723, a provision of the child protection act, which states:

"All records and reports concerning child abuse and neglect filed with the department of social and rehabilitation services or a district court are confidential and shall not be disclosed, and it shall be a violation of the Kansas child protection act for any person, association, firm, corporation or other agency willfully or knowingly to permit or encourage the unauthorized dissemination of the contents of such records and reports except as otherwise provided by the Kansas child protection act or under the following conditions: (a) Upon the order of any court or record after a determination by the court issuing the order that such records and reports are necessary for the conduct of proceedings before it and are otherwise admissible in evidence, except that such access shall be limited to in camera inspection unless the court determines that public disclosure of the information contained therein is necessary for the resolution of an issue then pending before it; and (b) the secretary of social and rehabilitation services or the judge of the court where the report is filed may authorize access to such records and reports to: (1) A person licensed to practice the healing arts who has before him or her a child whom he or she reasonably suspects may be abused or neglected; (2) an agency having the legal responsibility or authorization to care for, treat, or supervise a child who is the subject of a report or record; (3) a parent, guardian, or other person responsible for the welfare of a child named in a report or record, with protection for the identity of reporters and other appropriate persons; (4) a police or other law enforcement agency investigating a report of known or suspected child abuse or neglect; (5) an agency of another state charged with the responsibility of preventing or treating physical or mental abuse or neglect of children within that state, if the state of the agency requesting the information has standards of confidentiality as strict as or stricter than the requirements of the Kansas child protection act."

The child protection act encompasses K.S.A. 1979 Supp. 38-716 through 724. The act is concerned with the reporting and investigating of child abuse. K.S.A. 1979 Supp. 38-723 relates to the confidentiality of reports and records concerning child abuse and neglect. Those records are not to be disclosed unless the court orders they are necessary for the proceeding before it, and then only an in camera inspection is allowed unless the court believes the report should be made public. The secretary of social and

rehabilitation services or the judge may authorize access to the records and reports to certain persons listed in the statute. The conflict: Which court records and reports statute applies in a deprived child proceeding, defined in K.S.A. 1979 Supp. 38-802(g)(3), involving an abused child?

Well established rules of statutory construction were stated in *American Fidelity Ins. Co. v. Employers Mut. Cas. Co.*, 3 Kan. App. 2d 245, 248, 593 P.2d 14 (1979):

"In construing a statute, legislative intent is to be determined by consideration of the entire act. The several provisions of an act, *in pari materia*, must be construed together with a view of reconciling and bringing them into workable harmony and giving effect to the entire statute if it is reasonably possible to do so. [Citation omitted.]

". . . Statutes relating to the same subject, although enacted at different times, are *in pari materia* and should be construed together."

The two sets of statutes, the juvenile code and the child protection act, do not operate totally independent of one another. Both acts deal with the general subject of proceedings involving juveniles and both statutes in question concern the related purpose of confidentiality of juvenile records. A significant tie between the acts further illustrating their lack of complete independence of one another is: If a person reported a possible case of child abuse, pursuant to K.S.A. 1979 Supp. 38-717, that person would be given immunity from any liability incurred "in any judicial proceeding resulting from such report." K.S.A. 1979 Supp. 38-718. Such contemplation of participation in a judicial proceeding obviously takes into account the fact that the identity of the reporter would be revealed while he or she testified at trial. Additionally, several portions of the juvenile code are referred to in the child protection act. See K.S.A. 1979 Supp. 38-721, citing K.S.A. 1977 Supp. (now 1979 Supp.) 38-816 and 1979 Supp. 38-721a, citing 1977 Supp. (now 1979 Supp.) 38-815.

Notwithstanding the ties between the two acts, we find the strict provisions of the child protection act regarding records and reports cannot govern the determination of access to reports and records in an action brought pursuant to the juvenile code. Although the two acts have the ties discussed the *purposes* of the above two acts remain dissimilar. K.S.A. 1979 Supp. 38-716 reveals the purpose of the child protection act:

"It is the policy of this state to provide for the protection of children who have been subject to physical or mental abuse or neglect by *encouraging the reporting*

*of suspected child abuse and neglect, insuring the thorough and prompt investigation of these reports and providing preventive and rehabilitative services where appropriate to abused or neglected children and their families* so that, if possible, the families can remain together without further threat to the children." (Emphasis added.)

The purpose of the child protection act is also illustrated in the former title of the act, the "child abuse and neglect reporting act." K.S.A. 1976 Supp. 38-724, amended in 1977. See L. 1977, ch. 149, § 11. The juvenile code governs the procedure to be used in actions involving juveniles brought within its purview. The provisions of the code generally reflect a philosophy best expressed as follows:

"[F]irst, the child in trouble or danger needs care; second, there is to be no import of a criminal act; third, the proceeding is protective, not punitive; and fourth, incarceration is limited and carefully controlled." Note, *The Amended Kansas Juvenile Code: Can Parens Patriae Withstand Due Process?* 18 Washburn L.J. 244, 245, (1979).

Respondents Morrison and the Kansas Department of Social and Rehabilitation Services express concern that the stated purpose of the child protection act would be thwarted if parents are given access to the social file in a juvenile proceeding arising from the reporting of child abuse, and the name of the reporter is revealed. They argue future reporters of such actions would be discouraged from speaking out for fear of reprisal. We believe the most logical interpretation of the two acts is as follows: Because the stated purpose of the child protection act is to encourage the reporting of child abuse and neglect, in order to encourage the reporting a certain amount of anonymity of the reporter must be retained. Therefore, during the investigation of the reported abuse, and until formal proceedings are initiated in a deprived child action pursuant to the juvenile code, the report that is filed with the trial court or the Kansas Department of Social and Rehabilitation Services is governed by the restrictions set forth in K.S.A. 1979 Supp. 38-723. After the report has been investigated, however, a valid claim of child abuse is found, and an action is begun under the Juvenile Code, it is proper to allow access to the report, filed in the social file, to the persons enumerated in K.S.A. 1979 Supp. 38-805(*b*). As stated earlier, petitioner herein clearly falls within the definition of a party to the action pursuant to K.S.A. 1979 Supp. 38-805(*b*)(2) and is entitled to view the social file.

Based upon the foregoing, we grant the petition for mandamus.

MCFARLAND, J., dissents.