Bernard Meter, J.
Petitioner herein is the vendee under a contract, conditioned upon the property being usable for apartment houses, covering a five-acre parcel of land which fronts 350 feet on North Main Street, Freeport, and extends westerly some 680 feet. By this article 78 proceeding petitioner seeks to review the affirmance by the Board of Zoning Appeals of the Building Inspector’s denial of a building permit, and the board’s denial of petitioner’s application for a variance on the ground of practical difficulty and unnecessary hardship. The applica *1074 tion to intervene orally made on the return day by owners of neighboring and in some instances contiguous parcels is granted. The petition is dismissed with respect to the first question and remanded to the board with respect to the second.
The propriety of the denial of a permit to build apartment houses turns on the zoning of the property. Petitioner contends that there is uncertainty concerning the boundary between Residence A and Business B with respect to this parcel, that the Business B zoning, therefore, extends to the rear line of the parcel under applicable provisions of the ordinance, and that, since apartments are permitted in a Business B District, it is entitled to the requested permit. The claimed uncertainty does not arise from the present zoning map which, as scaled by the court, shows the easternmost 150 feet as Business B and the balance as Residence A. It is said to arise from the fact that the entire parcel is carried on the tax records as commercial and that the property in question is the only one not shown on the map as business property to its rear lot line. The Village of Freeport abandoned use of its tax map as the zoning map in 1945. Since that date, the tax status of a parcel can have no effect on its zoning, for taxes paid are related to actual use and zoning to permissible use. From petitioner’s brief it appears that for more than 40 years the property has been used by the family of the contract vendors to conduct a florist and nursery business. Such being the case, the tax rolls simply recognized the present nonconforming use; that recognition creates no uncertainty in boundary.
That the map shows the subject parcel as Business B to a depth of 150 feet, and other parcels in the same block and in other blocks along North Main Street to a greater depth which (it will be assumed, although the record before the court does not substantiate) is the entire depth of the other parcels and applies to every parcel with a depth greater than 150 feet except the subject parcel, likewise creates no uncertainty in boundary. Petitioner has not argued that the differentiation between the map treatment of its property and that of its neighbors constitutes an unreasonable and, therefore, unconstitutional discrimination. Rather, it says, the fact that the distinction is made with respect to its parcel alone raises doubt that the distinction was intended. To state the argument is to answer it; to consider the absurd result produced, an “ uncertainty ” 550 feet in-width with respect to a district 15Ó feet wide, is to make quite evident that petitioner has completely lost sight of the wording of the ordinance and the function of a zoning map.
*1075 Prior to 1924 the Village of Freeport had no zoning ordinance. From 1924 until 1945, the tax map was used as the zoning map. Section 1 of article III of the 1945 Ordinance divided the village into seven classes of zoning districts and provided:
“ The boundaries of said districts shall be as shown upon the map adopted July 6, 1945, attached to and made a part of this Ordinance which shall be designated as the 1 Building Zone Map of the Village of Freeport, N. Y.’
“ The said map and all notices, references and other things shown thereon and therein shall be and are used as much a part of this Ordinance as if the matters and things shown on and by said map were all fully described herein.
‘ ‘ District boundaries within a block are intended to follow existing lot lines or municipal boundary lines as shown on the official tax map of the Village of Freeport. Where a boundary line does not follow such a location and is not specifically indicated on the Building Zone map, it shall be considered 100 feet back from and parallel to the nearest street line.
‘ ‘ Where a Business ‘ B ’, Manufacturing or Industrial District area and a greater restricted district area are indicated within a block the lesser restricted area shall be considered the rear lot line of the properties affected. In no event, however, ■shall the area used by such Business 'B Manufacturing on Industrial District exceed one hundred and, fifty (150) feet from the street line of such lesser restricted area except by permission of the Zoning Board of Appeals.
“ No building or land shall be used and no building or structure shall be erected or structurally altered except in conformity with the regulations herein prescribed.” (Emphasis supplied.)
As the italicized language made clear, the map delineated the district line. Such delineation is, of course, valid and binding. (8 McQuillin, Municipal Corporations [3d ed.], § 25.89; 1 Yokley, Zoning Law and Practice, §§ 44, 71; see Cordts v. Button Co., 146 Mise. 10, affd. 241 App.'Div. 648, affd. 266 N. Y. 399; Adams v. Town of West Seneca, 280 App. Div. 1038, motion for leave to appeal denied 305 N. Y. 929.) The statement in the ordinance that district boundaries were intended to follow existing lot lines affords petitioner no solace, for it is immediately followed by a sentence recognizing a specific indication on the map as controlling where a boundary did not follow such lot line, and setting up a 100-foot rule to be followed only where both factors were absent. Nor does the succeeding paragraph assist petitioner for it specifically limited Business B Districts to 150 feet except where extended by board permission; indeed, *1076 that provision appears to explain why the Business District, as delineated on the map is 150 feet rather than 100 feet in depth. As established by the 1945 Ordinance and map, therefore, the Business District included only the easternmost 150 feet of the subject parcel.
But, says petitioner, the ordinance was amended in 1952 and the limitation of a Business B District to 150 feet dropped. While such is the case, it does not avail petitioner for section 3 of the 1952 Ordinance, as amended, which established various classes of districts, provides in pertinent part as follows:
“ (b) shown on map: Said districts are bounded and defined as shown on a map entitled ‘ zoning map op the village of Free-port ’ adopted as amended on November 3, 1952 and certified by the Village Clerk, and revised March 25, 1956, which accompanies and which, with all explanatory matter thereon, is hereby made a part of this ordinance, as though all the lines, matters and other things depicted thereon were all fully described herein.
“ (c) RULES FOB, INTERPRETATION OF DISTRICT BOUNDARIES: Where uncertainty exists with respect to the boundaries of any of the aforesaid districts as shown on the zoning map, the following rules shall apply: * * *
‘ ‘ 8. Where a Business ‘ B ’, Manufacturing or Industrial District area and a greater restricted area are indicated within a block, the boundary of the lesser restricted district area shall be considered the rear lot line of the properties affected. ’ ’
Not to be lost sight of is the fact that the latter provision states a rule of interpretation and is of no independent significance with respect to the establishment of district lines. It has no application to the instant case, for there is no “ uncertainty * * * with respect to the boundaries * * * shown on the zoning map ” of the Business B District as it runs through the subject parcel. Unless the word “ uncertainty ” is completely distorted, a scaled distance of 150 feet cannot be read as 680 feet. It is the map demarcation that governs except where there is uncertainty. The continued delineation of the Business District as of 150-foot depth despite the 1952 and later changes in the zoning map is determinative of the first question presented by this petition.
With respect to the second question, the village argues that no application for a variance was made. While some credence is lent to that contention by petitioner’s attorney’s closing statement to the board, the written appeal asks for a variance, the attorney’s opening statement indicated intention to press both points and the board member who moved denial of the applica *1077 tion stated in making his motion: ‘ ‘ The question of hardship does not enter into this application since the applicant here is by his own application a contract-vendee.”
Although a vendee under an unconditional contract is the equitable owner of the property and as such entitled to apply for a variance (Matter of Mandalay Constr. v. Zimmer, 22 Misc 2d 543; see Matter of Norman Associates v. Ketler, 16 Misc 2d 764), the Court of Appeals has twice left undecided the question whether the vendee of an executory contract conditioned upon the granting of a zoning variance is a “person aggrieved” within the meaning of the variance provisions of the Town Law (Matter of Hickox v. Griffin, 298 N. Y. 365, 371; Matter of Taxpayers’ Assn. v. Board of Appeals, 301 N. Y. 215, 219) and in Vernon Park Realty v. City of Mount Vernon (307 N. Y. 493, 500) carefully distinguished the right of such a vendee to question the validity of the zoning ordinance.
Matter of Clark v. Board of Zoning Appeals (301 N. Y. 86, 89, cert, denied 340 U. S. 933) makes clear, however, that one who “knowingly acquires land for a prohibited use, cannot thereafter have a variance on the ground of ‘ special hardship ’ ’ ’. The rationale of that rule is that, having acquired the property with notice of the zoning resolution and for a consideration appropriate to the limitation of use, the purchaser is confronted by “no element of the unexpected or incalculable to aggravate his plight ” (People ex rel. Fordham Manor Ref. Church v. Walsh, 244 N. Y. 280, 288). That the unconditional vendee under an executory contract or the purchaser under an executed contract will be denied a variance (Matter of Clark v. Board of Zoning Appeals, supra, Matter of Blumberg v. Feriola, 8 A D 2d 850, affd. 7 N Y 2d 852; Matter of Freitag v. Marsh, 280 App. Div. 934; Matter of Holy Sepulchre Cemetery v. Board of Appeals of Town of Greece, 271 App. Div. 33; Matter of North Titus Residential Assn. v. Board of Appeals, 205 Misc. 518, 521; cf. Matter of Murphy v. Kraemer, 16 Misc 2d 374) does not necessitate holding that a vendee under a contract both executory and conditional must likewise be denied. In the latter case, it is the vendor’s rights that are being determined; if the vendor acquired the property after the zoning limitation came into existence," neither he nor his vendee may have a variance (Matter of Blumberg v. Feriola, supra) but if he owned the property before the ordinance was adopted or amended to impose the restriction, denial of a variance to his vendee is a denial of the vendor’s right “ to seek a way out of the plight occasioned by said limitations ” (Matter of Bobrowski v. Feriola, 2 A D 2d 708, 709; see Matter of Holy Sepulchre Ceme *1078 tery v. Board of Appeals of Town of Greece, supra, p. 41; Matter of Murphy v. Kraemer, supra; cf. Fischer v. Bojenski, N. Y. L. J., April 4, 1955, p. 15, col. 2). Further, since the contract is conditional and executory, the vendee “ should be deemed to have applied as the agent and with the consent of the holder of the legal title ” (Matter of Hichox v. Griffin, 274 App. Div. 792, revd. on other grounds 298 N. Y. 365). Matter of Slater v. Toohill (276 App. Div. 850) did not decide that the vendee may not be deemed agent for a conditional vendor who has not joined in the application, but the converse of that proposition. It follows that the board was in error in denying the variance application because applicant is a contract vendee, and that respondent’s first affirmative defense, which raises the same question, is legally insufficient and should he stricken-
Petitioner asks that the matter be referred to a Referee rather than remanded to the hoard for further consideration of the variance application. To do so where, as here, no findings were made by the board, and factual questions necessary to determination of the right to a variance were not fully developed in the proceeding before the board, would he to try the variance issue de novo. Section 179-b of the Village Law in authorizing the taking of evidence by the court or a Referee did not confer such authority (Matter of Cunningham v. Planning Bd., 4 A D 2d 313, 317).
An order will, therefore, be entered (1) granting the application to intervene, (2) dismissing so much of the petition as seeks to review the hoard’s ruling affirming the Building Inspector’s denial of a permit, (3) dismissing the first affirmative defense, and (4) remanding the matter to the board with directions to hold a further hearing on the variance application and to base its ruling on the application on specific findings of fact.