OPINION OF THE COURT
William L. Ford, J.
This a proceeding pursuant to CPLR article 78 brought to review and annul a determination of the respondent rendered on or about December 30, 1981 which denied the application of petitioner for the issuance of a special permit to erect garden type apartment residences.
The premises for which the special permit is sought are located in a “B” residence zone in the City of Johnstown. The City of Johnstown Planning Board recommended to the respondent that the special permit be granted on July 23, 1981. On July 24, 1981 the petitioner by a letter applied to the respondent for the grant of the special permit. On August 19, 1981 the respondent denied the application. That denial came before this court for review pursuant to CPLR article 78 and the undersigned issued a written decision dated October 22, 1981 which held that the determination had to be annulled and the matter remitted for a hearing on the application and for further proceedings because of procedural errors. An order was duly entered and the required hearing was held and the application was again denied.
*414 At the outset, it should be noted that the parties agreed to a settlement of their controversy as to the responsibility of the respondent to furnish a transcript of the hearing held in this matter. A transcript was furnished the court and it was stipulated that it was true and accurate and was to be deemed furnished as part of the respondent’s return pursuant to CPLR 7804 (subd [e]). It was also stipulated that a photograph signed on its back by the petitioner" and John Jurica shows the premises at issue marked in red and was to be considered a part of the respondent’s return.
Among other things, the petitioner contends that the respondent lacks the authority to deny the issuance of the special permit herein sought.
Upon the oral argument in this matter the petitioner submitted a bound copy of chapter 22 of the Code of Ordinances of the City of Johnstown (hereinafter referred to as zoning law). Counsel for the parties agreed that its provisions were in force and effect as to this proceeding with the exception of section 22-207 of the zoning law which was amended during the pendency of the petitioner’s application to the respondent and a copy of the amended version of that section was also duly submitted.
It is undisputed that the property at issue herein is located in an area zoned “B” residence. Sections 22-402 and 22-403 of the zoning law are the controlling provisions as to the regulation of use (uses) in “B” residence areas and they provide in relevant parts as follows:
“Sec. 22-402. Use regulations controlling residence ‘B’ zones.
“In a ‘B’ residence zone no dwelling shall be erected, altered or used except as follows:
“(1) As either a one-family detached or semidetached dwelling or a two-family detached dwelling * * *
“(2) ‘Garden type’ apartments of not more than two (2) stories upon issuance of a special permit by the zoning board of appeals.
“(3) Professional medical buildings upon special permit by the zoning board of appeals.
*415 “(4) Parking lots and underground facilities * * * in connection with an -existing industrial use * * * upon issuance of a special permit by the zoning board of appeals.
“Sec. 22-403. Permitted uses in ‘A’ and ‘B’ residence zones.
“In an * * * ‘B’ residence zone no building * * * except as provided in sections * * * 22-402, or for one or more of the following uses:
“(1) The office * * * situated in the same dwelling use * * * as his private dwelling * * *
“(2) Hotels; boardinghouses; tourist homes * * * except [those] * * * maintaining a bar or having an alcoholic beverage license * * *
“(5) A municipal or public utility * * * use upon issuance of a special permit by the zoning board of appeals.”
It should be noted that section 22-409 of the zoning law regulates the location of accessory buildings and “car ports”. Further, sections 22-501 through 22-514 state specific requirements as to the location of buildings on lots, etc.
The zoning law has various provisions other than the above-quoted section 22-402 relating to the issuance of special use permits. Section 22-410 regulates the establishment/continuance of junk yards and in subdivision (b) it purports to authorize a junk yard use upon a special permit “issued by the zoning board of appeals or common council”, however, the ordinance plainly requires that such permission shall be obtained from the common council upon consideration of certain specified criteria.
In subdivision (e) of section 22-410 (junk yard) the regulatory function of the respondent is limited to the issuance of a certificate that the “location is not within an established district absolutely restricted against such uses or otherwise contrary to the prohibitions of the zoning ordinance.” In addition to the “certificate of approval location” the respondent is to indorse its recommendations on the application for a junk yard license/permit.
Article VIII of the zoning law regulates the location of trailer/mobile homes and parks. In paragraph (a) of section 22-802 of the zoning law it provides for the location of *416 individual trailers or mobile homes in the industrial zone “upon permit issued by the zoning board of appeals upon approval by the planning board.” Section 22-807 of the zoning law requires an individual seeking to locate a trailer or mobile home to first submit an application to the building inspector who shall pass upon its compliance with the zoning law and if he finds it proper he will transmit the application to the planning board and ¿/the planning board approves the application, the respondent “may issue a permit”.
In subdivision (b) of section 22-404 of the zoning law it is provided in part that: “In a commercial zone the following uses are permitted upon issuance of a special permit by the board of appeals, which permit, among other things, shall specify proper ingress and egress; and for any such use which abuts any lot in a residence district, fencing, screening and landscaping.”
The junk yard and commercial use provisions referred to and quoted hereinabove and contained in sections 22-410 and 22-404 (subd [b]) of the zoning law are the only part of this zoning law ordinance which purport in any way to define the duties delegated to the respondent when called upon for the issuance of a special permit.
The respondent contends that section 22-102 is intended to serve as guidelines, but the following language seems plainly applicable only to an interpretation of the zoning law provisions and not to the powers of the board: “In their interpretation and application, the provisions of this chapter shall be held to be the minimum requirements adopted for the public health, safety, comfort, convenience and general welfare.” In Matter of Tandem Holding Corp. v Board of Zoning Appeals of Town of Hempstead (43 NY2d 801, 802) the court noted that “[standards governing issuance of special exceptions [uses] may not be so general or tautological as to allow unchecked discretion on the part of the zoning board”. While the quoted language of section 22-102 would be applicable in construing the reach of any standards or duties, if they appeared, in the zoning law for the issuance of special use permits, standing alone the language furnishes no specific or general standards or *417 duties nor are they otherwise set forth in the zoning ordinance sections.
The respondent further contends that pursuant to the amendment of section 22-207 of the zoning law by the common council, it was empowered to enact its own criteria. Section 22-207 was amended subsequent to the petitioner’s application and prior to the determination of the application to provide in pertinent part: “The Board of Appeals shall have the power to adopt * * * rules and regulations * * * including specific criteria for issuance of variances and permits.” The respondent thereupon adopted rules providing review guidelines and/or conditions for the issuance of special permits. This contention must be rejected. “A municipal legislative authority may not delegate to a board of zoning appeals the unrestricted power to grant or withhold special permits.” (67 NY Jur, Zoning and Planning Laws, § 338, p 863.) Standards of a general character have been upheld by the courts (Matter of Aloe v Dassler, 278 App Div 975, affd 303 NY 878), however, “One caveat is appropriate. Standards governing issuance of special exceptions may not be so general or tautological as to allow unchecked discretion on the part of the zoning board” (Matter of Tandem Holding Corp. v Board of Zoning Appeals of Town of Hempstead, 43 NY2d 801, 802, supra).
Accordingly, section 22-207 of the zoning law may not be construed as generally granting power to the respondent to set its own criteria and it will be construed as intended only to permit the respondent to specify criteria in accordance with the guidelines already expressed in the zoning law for the granting of special permits.
In the present case no issue is raised as to the meaning of the use “garden type apartments” set forth in section 22-402 of the zoning law. It is neither found nor contended by the respondent that a permit to use the subject premises for the purpose of garden type apartments would be contrary to any specific prohibition on such use either in the zoning law or any other general law or specific ordinance applicable thereto. The respondent relies on the requirements of ECL article 8 and more particularly Part 617 of the Rules and Regulations of the Department of Environmental Conservation (6 NYCRR Part 617) to establish that as a
*418 condition to the granting of a permit the petitioner must first comply with the requirements for environmental studies and permits. However, the zoning law contains no such requirement as to the issuance of a special permit and no general ordinance applicable to the petitioner is cited. Ministerial acts of agencies (respondent) are exempt from the definition of “actions” subject to ECL article 8 (ECL 8-0105, subd 5, par [ii]). As in the case of Chem-Trol Pollution Servs. v Board of Appeals of Town of Porter (65 AD2d 178, 180-181), the environmental issues are not a part of the respondent’s criteria as to the issuance of a permit for the use.
The further contention of the respondent that pursuant to section 239-m of the General Municipal Law the matter should have been referred to the Fulton County Planning Board prior to approval by the City of Johnstown Planning Board is without any merit because the only municipal agency authorized to grant or deny the permit herein is the respondent and, therefore, the reference to the Fulton County Planning Board prior to action by the respondent was all that was required by section 239-m of the General Municipal Law.
Finally, the respondent has asserted that petitioner did not establish that he was the real party in interest and/or that he had a legal status as contract vendee for purposes of seeking the special permit. However, the very exhibits (attached to affidavit of George E. Langr, Esq., dated Feb. 16, 1982) relied upon by the respondent to show no valid purchase contract between the petitioner and the legal owners of the premises at issue establish that as of the time the application for a permit was made the petitioner was an equitable owner of the premises as a contract vendee. As such an equitable owner, the petitioner was entitled to apply for the special permit. (See, e.g., Matter of Colonie Park v Malone, 25 Misc 2d 1072, 1078; Code of Ordinances of City of Johnstown, § 22-110.)
The assertion of respondent that as a matter of law the contractual interest of the petitioner ended prior to the initiation of this article 78 proceeding is without any merit. The contract of sale dated March 30, 1981 did not provide that time was of the essence and expressly left it to *419 the sellers “to cancel or terminate this agreement as a result of the buyer’s default”. There is no showing or even allegation that the sellers have canceled the agreement and in view of the extension agreement dated October 1, 1981 it is not certain that the closing date has yet passed. Accordingly, the respondent has not raised an issue of fact as to the standing of the petitioner to maintain this proceeding.
In view of the foregoing considerations it is not now necessary to pass upon the question of whether or not the transcript-record of the hearing held by the respondent is sufficient to establish a reasonable basis for the denial of the petition upon grounds related to the health, safety or welfare of the community. Upon the present record there is nothing to indicate that the use as garden type apartments might in any way be a use prohibited in the “B” residence areas. Accordingly, the denial of the permit must be annulled because it is arbitrary and capricious. There is no need to remand the matter to the respondent for the purpose of considering the imposition of reasonable conditions consistent with the surrounding community because there are no standards for the respondent independent of those already committed to the building inspector and/or other agencies. The additional assertion of the respondent that the petitioner’s application failed to comply with the criteria set forth in the rules and regulations of the respondent enacted while this proceeding was pending before it has no merit. The respondent duly entertained the application as submitted and made no request to the petitioner to in any way amend the pending application.
The petition is granted to the extent of directing the respondent to issue a special use permit to petitioner for use of the premises for garden type apartments, with costs to petitioner.