■ In the Matter of COMMCO, INC., Respondent, v STANLEY P. AMELKIN, as Chairman of the Zoning Board of Appeals of the Town of Huntington, et al., Appellants. — In a proceeding pursuant to CPLR article 78 to review a determination of the Zoning Board of Appeals of the Town of Huntington, dated February 25, 1982, which denied petitioner's application for a use variance, the appeal is from a judgment of the Supreme Court, Suffolk County (Doyle, J.), dated September 22, 1982, which granted the petition, annulled the determination, and directed the Board to issue the variance applied for, subject to certain limitations.

Judgment affirmed, without costs or disbursements.

This proceeding concerns a request by the petitioner, Commco, Inc., for a use variance which would permit it to use an obsolete school building as a residence for senior citizens. The evidence reveals that the building in question, the Beverly Hill School, is a part one-story and part two-story brick building containing 69,000 square feet of space, located on 14.5 acres of land.

The school was originally constructed in 1957 at a cost of $990,000 and in 1966 an addition to the building was made at a cost of $750,000. The total cost of the building was, therefore, $1,740,000.

On March 14, 1979, the South Huntington Union Free School District, the owner of the building, voted to close the school due to declining student enrollment. The school district then attempted to sell the building through advertising and through real estate agents. In August 1981, the school district entered into a contract to sell the property to petitioner Commco, Inc., conditioned on obtaining a zoning change or variance which would permit the building to be used as a residence for senior citizens, not to exceed 200 units.

The subsequent application for a use variance was denied by the Zoning Board of Appeals. The Board found that the subject property is currently zoned R-40 and is in the midst of a thriving residential community of one-acre housing developments. The Board characterized the proposed use as a "hotel catering to the elderly", and found that the residential character of the neighborhood would be altered if a use variance were issued. It also concluded that the land could yield a reasonable rate of return as zoned, if development of the 14.5 acres was undertaken in accordance with the zoning ordinance. The Board also found that the plight of the owner of the school was not unique, inasmuch as numerous other schools in the area were also being closed due to falling enrollments.

Special Term annulled the determination of the Board of Zoning Appeals and directed it to issue a use variance limited to the building and the area immediately adjacent thereto. We agree with Special Term that in denying the application for a use variance the Board acted arbitrarily and, therefore, we affirm.

We note, initially, that petitioner Commco, Inc., as a conditional vendee under an executory contract, was entitled to make application for the use variance (*Matter of Hickox v Griffin,* 274 App Div 792, *revd on other grounds* 298 NY 365; *Matter of Colony Park v Malone,* 25 Misc 2d 1072).

Turning to the merits, we find that petitioner adduced sufficient proof to satisfy its burden of showing (1) that the land in question cannot yield a reasonable return if used only for the purposes allowed by the current applicable zoning, (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood and (3) that the use to be authorized by the variance will not alter the essential character of the locality. Thus, petitioner has met the three criteria set forth in *Matter of Otto v Steinhilber* (282 NY 71) and is entitled to a variance.

Specifically, we perceive no rational basis for concluding, as the Board did, that the land can yield a reasonable return if used in accordance with the prevailing zoning. The uncontradicted testimony of a real estate expert reveals that in order to develop the land in accordance with R-40 zoning, the school building would have to be demolished at an approximate cost of $50,000 and the 14.5 acres could then be subdivided into 12 one-acre parcels, which, if available for development of houses, would have a market value of $250,000. The value of the property under the R-40 zoning would, therefore, be $200,000. In addition to the foregoing, there was testimony concerning the carrying charges and debt service, and the costs of maintaining the building in its current state. There was sufficient dollars-and-cents proof of all matters bearing upon the return available under the existing zoning (*Matter of Village Bd. v Jarrold,* 53 NY2d 254; *Matter of Crossroads Recreation v Broz,* 4 NY2d 39). This evidence confirms what common sense dictates — that a 69,000 square-foot brick building cannot yield a reasonable return in an R-40 zone without a use variance. The only alternative — the demolition of a building worth over $1.5 million, in order to be able to sell the land for development in accordance with the R-40 zoning — is manifestly unreasonable.

Further, we also find no rational basis for the Board's determination that the plight of the owner is not unique. Obviously, the

condition that creates the hardship for the owner in this case is that its land has been improved with a now-obsolete structure. The requirement that the hardship be due to unique circumstances may be met by showing that the difficulty complained of relates to existing improvements on the land which are obsolete or deteriorated (3 Anderson, American Law of Zoning § 18.35 [2d ed]; *see also, Matter of Fiore v Zoning Bd. of Appeals,* 21 NY2d 393; *Matter of Jayne Estates v Raynor,* 22 NY2d 417). The condition causing the hardship in this case is obviously not so pervasive throughout the zoning district so as to require the conclusion that if all similarly situated parcels were granted a variance, the zoning of the district would be materially altered (*see, Matter of Douglaston Civic Assn. v Klein,* 51 NY2d 963).

Finally, the Board's determination that the use of the building as a residence for senior citizens would alter the essential character of the neighborhood is likewise without a rational basis. The uncontradicted evidence regarding traffic conditions reveals that there would be less traffic generated by the building, if used as a residence, than there was when the building was used as a school. A representative of Commco testified as to the characteristics of other residences operated by it. The tenants are charged various monthly rates, starting at $750 a month. The facility is not fairly characterized as a "hotel". The conversion of the building from a school into a home for senior citizens would enhance, not detract from, the residential character of the neighborhood.

Accordingly, there is no rational basis for the Board's determination that the three criteria set forth in *Matter of Otto v Steinhilber (supra)* had not been met. Special Term therefore properly ordered that the petition be granted and that the Board's determination be annulled. Titone, J. P., Thompson, O'Connor and Rubin, JJ., concur.