(625 P.2d 516)
No. 50,163

MARTIN MARIETTA AGGREGATES, *Plaintiff-Appellee*, v. BOARD OF COUNTY COMMISSIONERS OF LEAVENWORTH COUNTY, *Defendant-Appellee*, v. MILDRED O. BISHOP, JAMES L. BISHOP, EVERETT D. BISHOP II, KAREN CLARKE, EARL JONES, LUCILLE JONES, BLAKE WILSON, BILLIE JOYCE WILSON, LOUIS J. WRIGHT, SELENA E. WRIGHT, MARY GUMM, J. C. GUMM, MAURICE BARRY, MILDRED BARRY, DONNIE L. SMITH, SR., JO ANN SMITH, ROBERT L. WALTA, DOROTHY E. WALTA, Mr. and Mrs. JOE NICK and TANGLEWOOD WEST OWNERS ASSOCIATION by and through JOHN REYNOLDS and JO ANN BIDNICK, *Intervenors-Appellants*.

Petition for review denied April 29, 1981.

Opinion filed March 20, 1981.

*Edward H. Powers, Jr.,* and *Robert L. Boyce, Jr.,* of Kansas City, for inter-venors-appellants.

*Robert D. Beall,* of Leavenworth, for plaintiff-appellee.

*Patrick J. Reardon,* of Leavenworth, for defendant-appellee.

Before MEYER, P.J., ABBOTT and SWINEHART, JJ.

ABBOTT, J.: This case involves the issuance of a special use permit to establish and operate an underground rock mine in a rural area. The trial court issued a writ of mandamus ordering the defendant, Board of County Commissioners of Leavenworth County (county commissioners) to issue the permit to the plaintiff, Martin Marietta Aggregates. This appeal is taken by land-owners in the general area who were allowed by the trial court to intervene, and whom we will refer to as intervenors. The county commissioners do not appeal.

We believe the following issues are before us:

1. Was mandamus an appropriate remedy?

2. Was plaintiff the real party in interest to apply for the special use permit?

3. Did the procedure followed by the county commissioners and the Leavenworth County Planning Board violate the inter-venors' right to notice?

4. Was securing a special use permit the wrong method to gain permission to begin an underground mine?

5. Is the trial court's finding that the county commissioners' action was reasonable supported by the evidence?

The basic facts are simple and are largely undisputed. Plaintiff obtained an option to lease land consisting of some 300 acres owned by Shady Trail Ranch Enterprises, Inc., a family corpora-tion owned by Glenn E. Price, Marietta R. Price and John R. Price. Plaintiff then applied for a special use permit to extract raw materials such as rock, gravel, sand, and so forth, from the land, it being plaintiff's intention to mine the raw materials so as to end up with underground storage facilities.

Plaintiff's application for the special use permit was referred to the Leavenworth County Planning Board (planning board), which caused publication notice to be made and copies mailed to all landowners within 1,000 feet of the property as required by the Zoning Resolution of Leavenworth County, Kansas (1962), and the planning board. The intervenors conceded at oral ar-

gument that proper notice was given for the first meeting of the planning board. A large group of landowners and other interested parties attended, as did all three county commissioners. The planning board held a hearing and recommended to the county commissioners that a special use permit be issued, provided that plaintiff agreed to comply with nine conditions.

The county commissioners considered the recommendation on September 28, 1977. A number of interested parties appeared at that time and stated they had not been aware of the earlier planning board meeting. The county commissioners referred the matter back to the planning board so as to afford an opportunity for people in the area to present their views, and requested that the matter be considered at the planning board meeting of November 9, 1977. The planning board met on that date at 7:30 p.m., with 85 persons in attendance, including two of the county commissioners, and the matter was again fully explored. All of the intervenors were personally present or represented by counsel. The planning board unanimously reaffirmed its previous recommendation to issue the special use permit.

Some two weeks later on November 23, 1977, at a regular meeting, the county commissioners considered a resolution to issue a special use permit to the plaintiff. Again, all of the intervenors were present either in person or by counsel. After some discussion, two of the commissioners voted in favor of issuing the permit with the conditions recommended by the planning board, and one commissioner voted in opposition to issuing the permit. The county commissioners were of the opinion that their unanimous vote was required to issue the requested permit; consequently, they denied the issuance of the special use permit and so advised the plaintiff. The two commissioners who voted in favor of issuing the permit signed the prepared resolution, which shows on its face, "Denied for lack of unanimous vote." No further hearing was had on the merits on this occasion. It is evident from the transcript of the meeting that it was the opinion of the county commissioners that there was little use in discussing the recommendation since a unanimous vote was necessary and it was already known that one of their members was going to vote against issuing the permit. It is also apparent from these proceedings that the opposing commissioner did not believe the planning board's recommendation to be unreason-

able, but stated he felt obliged to vote against it because his constituency was opposed to it.

Plaintiff did not file a direct appeal under either K.S.A. 19-2926 (now 1980 Supp.) or K.S.A. 19-223, but did file an action in mandamus on December 23, 1977 (within 30 days after the county commissioners' action). Basically, the mandamus action alleged that plaintiff was entitled to receive the special use permit as a result of the two-to-one vote. The landowners made application to intervene in the mandamus action and were permitted to do so. On March 6, 1978, plaintiff filed an amended petition that had the effect of adding a count consisting of an appeal under K.S.A. 19-2926 to the mandamus action.

The parties requested an interlocutory appeal at this point, which was denied. The trial court by an alternative writ of mandamus then ordered the county commissioners to issue the special use permit subject to the nine conditions, or to appear by December 20, 1978, and show cause why it should not do so. At the same time, the intervenors were ordered to appear on the same date to contest the reasonableness of the county commissioners' affirmative vote to issue the special use permit.

The trial court heard evidence, inspected the premises, and found the action by the county commissioners to be reasonable and not arbitrary or capricious.

Intervenors argue at the outset that plaintiff misconceived its remedy as lying in mandamus; that the proper remedy to challenge the county commissioners' refusal to issue the requested special use permit should have been a timely direct appeal filed pursuant to K.S.A. 19-2926, 19-223, or 1980 Supp. 60-2101(*d*). Intervenors' argument is greatly enhanced by a recent Kansas Supreme Court decision holding that to be timely, appeals under 19-2926 and 19-223 must be brought within 30 days of a commission's decision. *Bolser v. Zoning Board for Aubry Township,* 228 Kan. 6, Syl. ¶¶ 2, 3, 612 P.2d 563 (1980). We believe *Bolser* does not apply for two reasons.

The key to the intervenors' argument is whether mandamus was a proper method with which to challenge the county commissioners' refusal to grant the special use permit. There is no issue of timeliness in regard to mandamus since there is no fixed time limit on the remedy. Mandamus, as governed by K.S.A. 60-801 *et seq.,* is available for the purpose of compelling the

performance of a clearly defined official duty or the performance of an act which the law specifically enjoins as a duty resulting from the office or trust. It may not be invoked to control discretion or to enforce a right that is in substantial dispute. *Gaslight Villa, Inc. v. City of Lansing,* 213 Kan. 862, 872-73, 518 P.2d 410 (1974).

To determine whether mandamus is available requires close scrutiny of the circumstances attending the denial of the special use permit. The parties do not dispute that the reason the county commissioners denied the special use permit, despite their two-to-one vote in favor of issuing it, is because they perceived that a unanimous vote was required.

The county commissioners' finding that a special use permit could be granted only by unanimous vote was based on the following zoning resolutions:

"The County Commissioners of the County of Leavenworth, may, by special permit, and after a public hearing, which shall be held as provided, in the last, paragraph in this article, authorize the location of any of the following buildings or uses in a district from which they are prohibited by this resolution:

. . . . .

"3. The extraction of raw materials such as rock, gravel, sand, clay and the like.

. . . . .

"Before issuance of any special permit for any of the above buildings or uses, the County Commissioners shall refer the proposed application to the County Planning Board to hold a public hearing thereon. The Planning Board shall give notice of such hearing in the same manner and require the same fees as provided in Article XXVI (Amendments) of this resolution. The Planning Board shall make a report upon the data presented at the hearing and also on the effect of such proposed building or use upon the character of the neighborhood, traffic conditions, public utility facilities and other matters pertaining to the general welfare. The Planning Board shall submit its report within thirty (30) days after the public hearing and no action shall be taken by the County Commissioners until such report is received." Zoning Resolution of Leavenworth County, Kansas, Article XVIII, Special Uses (1962).

"The County Commissioners of Leavenworth County may from time to time, on their own motion or on petition, after report and after public hearing by the County Planning Board, thirty (30) days notice of the time and place of which hearing shall have been given by publication in a newspaper having general circulation within the County, amend, supplement or change by resolution the regulations and districts herein or subsequently established. *In case of written protest against any proposed amendment, signed and acknowledged by the owners of twenty (20) percent of the frontage directly opposite, or directly in the rear of the frontage proposed to be altered,* filed with the County Clerk, *such amendment may not be passed except by the favorable vote of all members of the County Commissioners."* Zoning Resolution of Leavenworth County, Kansas, Article XXVI, Amendments § 1 (1962). Emphasis supplied.

The trial judge disagreed with the county commissioners and found that the unanimity requirement applied only to *amendments,* not to special use permits.

The plain and unabiguous language of Article XVIII states: "The Planning Board shall give notice of such hearing in the same manner and require the same fees as provided in Article XXVI (Amendments) of this resolution." Nowhere does this article state that the protest procedure for amendments must also be incorporated. See *Dent v. City of Kansas City,* 214 Kan. 257, 267, 519 P.2d 704 (1974). The fact the drafters specifically mentioned that the notice and fees were to be incorporated, but did not mention unanimous vote requirement, subjects it to the rule frequently used in determining legislative intent—that the mention or inclusion of one thing implies the exclusion of another. *In re Olander,* 213 Kan. 282, 285, 515 P.2d 1211 (1973). Thus, we conclude the drafters did not intend the voting provision to apply to special use permits. In addition, the Kansas Supreme Court has held that the procedures attendant to obtaining a zoning amendment are inapplicable to special use permits. *Weeks v. City of Bonner Springs,* 213 Kan. 622, 630-32, 518 P.2d 427 (1974). The trial court correctly determined that the county commissioners misapplied the law and that it had a clear ministerial duty to issue the special use permit, which could be compelled by mandamus.

Intervenors rely heavily on the following language from *Gray v. Jenkins,* 183 Kan. 251, 254-55, 326 P.2d 319 (1958):

"The general and well established rule is that mandamus is an extraordinary remedy, discretionary in character, and may ordinarily be brought only on relation of the proper public official, but private citizens may maintain it where they have a special and peculiar interest in the matter not common to the public generally and a clear legal right to compel performance of a specific act by the officer sought to be coerced. . . . The statutory law of this state provides that a writ of mandamus may not issue in any case where there is a plain and adequate remedy in the ordinary course of the law. [Cites omitted.]

"It has been held that mandamus cannot be used to control discretion, correct errors, or revise judicial action. *Mandamus cannot be used as a substitute for appeal* and it will not lie even though the party has no right of appeal or other remedy to review the action of a court, as the want of such remedy does not of itself entitle the party aggrieved to the extraordinary remedy of mandamus." (Emphasis added.)

That principle was recently reaffirmed in *Stephens v. Van Arsdale,* 227 Kan. 676, 608 P.2d 972 (1980), and *Nunn v. Morrison,*

227 Kan. 730, 608 P.2d 1359 (1980). In *Nunn* (at pages 731-33), the court held that mandamus is to be invoked only when there is no remedy by appeal unless the efficacy of the appeal is severely limited by the complained-of injury. That exception does not apply here. In *Stephens,* the court states that mandamus will not lie if another adequate remedy at law exists. *Stephens,* however, provides an exception:

"On occasion, this court, when confronted with significant issues of statewide concern, has broadened the availability of mandamus in order to expeditiously resolve the issues. In *Mobil Oil Corporation v. McHenry,* 200 Kan. 211, 436 P.2d 982 (1968), this court held:

" 'Mandamus is a proper remedy where the essential purpose of the proceeding is to obtain an authoritative interpretation of the law for the guidance of public officials in their administration of the public business, notwithstanding the fact there also exists an adequate remedy at law.' Syl. ¶ 12.

" 'The use of mandamus to secure a speedy adjudication of questions of law for the guidance of state officers and official boards in the discharge of their duties is common in this state.' Syl. ¶ 13." 227 Kan. at 682.

It appears that exception might be applied here to interpret the law for the county commissioners so that they could correctly exercise their authority. The Kansas Supreme Court impliedly accepted mandamus as a remedy in a very similar situation in *Ertl v. Board of County Commissioners,* 211 Kan. 202, 505 P.2d 700 (1973).

In any event, we believe the issues have been properly preserved by a timely appeal. On March 6, 1978, plaintiff filed an amended petition that added an appeal pursuant to K.S.A. 19-2926 challenging the county commissioners' denial of the permit, which we believe related back to the date of the original petition pursuant to K.S.A. 60-215(a) and (c). Given the liberality with which amendments are granted in modern practice and the fact that amendments that change the whole theory and statutory basis of the action are frequently allowed (see *Brooks v. Dietz,* 218 Kan. 698, 703-04, 545 P.2d 1104 [1976]), we are of the opinion the amendment relates back to the date the cause of action was filed and is timely.

Intervenors complain that plaintiff was not the real party in interest to seek the special use permit. Plaintiff had an option with the owner, Shady Trail Ranch Enterprises, to lease the affected land, subject to the issuance of the special use permit. The parties concede that the zoning resolution regarding special

use permits is silent as to who may be an applicant. Plaintiff offers two untenable arguments in support of its interest in the matter. First, it argues K.S.A. 12-726 defines a landowner as one who holds legal or beneficial interest, including the holder of a contract for purchase or the holder of an enforceable proprietary interest. This contention is true, but K.S.A. 12-726 is a definitional statute relating to planned unit developments and is not applicable to zoning in general. Second, plaintiff argues that K.S.A. 19-2926 allows any person having an interest in property affected by a county commission zoning decision to challenge the reasonableness of the act or regulation. While this may give plaintiff standing to sue, it still does not expressly allow plaintiff to apply for the special use permit, the crux of the intervenors' argument.

Pursuant to K.S.A. 60-217, a real party in interest is one who by substantive law possesses the right sought to be enforced. *Henderson v. Hassur,* 225 Kan. 678, Syl. ¶ 1, 594 P.2d 650 (1979). Intervenors cite the general rule that an option holder cannot qualify for a variance unless the legal owner has consented to or has joined in the variance proceedings since such a petitioner cannot suffer the hardship of the owner, which is one of the necessary conditions of a variance. *Conery v. Nashua,* 103 N.H. 16, 19, 164 A.2d 247 (1960); *Lee v. Board of Adjustment,* 226 N.C. 107, 37 S.E.2d 128 (1946); Annot., 89 A.L.R.2d 663, 667, 679-82; 101A C.J.S., Zoning & Land Planning § 250. It is important to note, however, that a special use permit is distinct from a variance. *Weeks v. City of Bonner Springs,* 213 Kan. at 631. A special use ordinarily need not be based on a showing of hardship nor satisfy other conditions necessary for the grant of a variance. The New Hampshire Supreme Court found such a distinction significant in *Burr v. Keene,* 105 N.H. 228, 230, 196 A.2d 63 (1963):

"It is conceded that the zoning ordinance does not expressly provide who may apply for a special exception and the question has not been raised here before. However the plaintiff argues that since the zoning ordinance (50-502) with respect to granting a variance speaks only of the owner of the property it must logically follow that only the owner may apply for a special exception since the difference between the two types of relief are not great. *Stone v. Cray,* 89 N.H. 483.

"While it is true as we said in *Stone, supra,* 487, that 'in practice sharp distinction between exceptions and variances may not in all cases be readily made . . .' there is a major difference between the two since there is no necessity for a hardship to exist in order to qualify for a special exception. RSA

31:72 II, III. An option holder cannot qualify for a variance since such a petitioner cannot suffer the hardship of the owner, which is one of the necessary conditions of a variance. *Conery v. Nashua,* 103 N.H. 16, 19.

"As pointed out by counsel for the defendants no useful purpose would have been served by requiring the owners' signatures on the petitions. The prospective purchasers were the real parties in interest and the only ones who could furnish the information which the board needed in order to make its decision."

This reasoning is persuasive in the case at hand.

Other authority exists that plaintiff here would have standing to apply for the special use permit. In *Board of Adjustment of Oklahoma City v. Shanbour,* 435 P.2d 569, 575 (Okla. 1967), the court stated:

"In their second proposition for reversal, plaintiffs in error contend that as Shanbour merely has an option to lease, which option is contingent upon the procuring of a variance to the zoning restrictions, he 'is not the real party in interest and cannot complain of a hardship ensuing from a denial of the desired grants.' To support their contention, plaintiffs in error cite Lee v. Board of Adjustment, 226 N.C. 107, 37 S.E.2d 128, 168 A.L.R. 1, and Minney v. City of Azusa, 164 Cal. App. 2d 12, 330 P.2d 255.

"Under the circumstances present in the action herein, we can not agree with the above contention. One of the owners of the tract, Charles A. Shadid, testified below concerning the alleged hardship applicable to the property. This participation by one of such owners as a witness establishes that Shanbour brought this action seeking a variance with the consent of the holder of the legal title. In our opinion, this consent is sufficient to allow Shanbour to seek the variance in his name without the owners of the tract being actual parties. Colony Park, Inc., v. Malone, 25 Misc. 2d 1072, 205 N.Y.S.2d 166; Hickox v. Griffin, 274 App. Div. 792, 79 N.Y.S.2d 193; Arant v. Board of Adjustment of City of Montgomery, 271 Ala. 60, 126 So.2d 100, 89 A.L.R.2d 652; Carson v. Board of Appeals of Lexington, 321 Mass. 649, 75 N.E.2d 116; 2 Rathkopf [The Law of Zoning and Planning (3rd Ed.)], Ch. 40, § 1; Ann., 89 A.L.R.2d 663, 667."

An applicant for a special use permit need not show a hardship, so that part of *Shanbour* does not apply here. In addition, the court found that the participation at trial of one of the actual owners established sufficient consent to meet the exception to the general rule. Here, Glenn Price, one of the owners of Shady Trail Ranch Enterprises, testified at trial in favor of the permit, and *Shanbour* does apply. All three of the Prices signed the special use permit application form as owners and officers of Shady Trail Ranch Enterprises, although they did not sign as applicants. Unquestionably they consented to plaintiff's filing the application and testified in favor of its being granted. In our opinion, plaintiff had standing to apply for a special use permit.

Intervenors next argue that the procedure followed by the county commissioners and the planning board violated their right to notice. Plaintiff's application for a special use permit was submitted to the county clerk through the planning consultant. The matter was then referred to the county planning board, which published notice as required by the regulations that a hearing would be held on September 14, 1977. The hearing was held and a substantial number of landowners and interested parties attended. All parties concede that notice of that meeting was given as required by the regulations. The planning board's report recommending issuance of the permit was submitted to the county commissioners; and on September 28, 1977, they held a meeting at which some of the affected landowners filed petitions objecting to the permit. The county commissioners referred the matter back to the planning board for another public hearing, which was held November 9, 1977. Notice of this meeting was mailed to a number of adjacent landowners, and resulted in approximately 85 interested parties attending the meeting. The planning board again recommended that the permit be issued after the matter was again fully explored.

Intervenors correctly argue that notice requirements of public hearings before a planning board are mandatory and jurisdictional in nature. *Carson v. McDowell,* 203 Kan. 40, 43-44, 452 P.2d 828 (1969); see *Reeves v. Board of Johnson County Comm'rs,* 226 Kan. 397, 402, 602 P.2d 93 (1979).

The applicable zoning resolution is silent on the question of whether notice complying with the statute must be given in a *subsequent* hearing. *Dent v. City of Kansas City,* 214 Kan. 257, implies that no new notice need be given a hearing that is merely a *continuation* of the first hearing for which proper notice was published. Our recent case of *Board of Lincoln County Comm'rs v. Berner,* 5 Kan. App. 2d 104, 108, 613 P.2d 676 (1980), holds that due process does not require notice and hearing before a planning board adopts a plan so long as there was notice and public hearing sometime prior to the meeting of adoption. This case is not really applicable here, however, since here the county commissioners actually *ordered* another hearing so that the planning board could give audience to the protesting landowners who missed the first meeting. 82 Am. Jur. 2d, Zoning and Planning § 300, p. 862, states in relevant part:

"In cases in which a hearing subsequent to that originally scheduled was held pursuant to the directive of a court to which an appeal had been taken from the granting of a variance or special permit upon such original hearing, the courts, in determining the necessity of giving notice of such subsequent hearing, have generally taken into consideration the peculiar facts and circumstances of each case, and have been guided, in some instances at least, by whether or not it appeared essential to the purpose for which such subsequent hearing was directed that a party opposing the variance or special permit should be given a further opportunity to present his views."

Here, the minutes of the county commissioners' meeting show that the protesting landowners who were complaining of lack of notice were informed *at that meeting* that the planning board would conduct another hearing on November 9, 1977, at 7:30 p.m. Furthermore, the minutes of the November 9 hearing indicate that Mr. Boyce and Mr. Powers, counsel for all intervenors, were present and participated fully in the hearing. We are of the opinion that when the first notice fully complies and all the complainants have actual notice and participate in a second hearing, the failure to give notice the second time in the manner set forth in the regulations was not prejudicial, and it does not affect the validity of the planning board proceedings. See *White v. Henry,* 199 Tenn. 219, 232, 285 S.W.2d 353 (1955); *Kasper v. Board of Appeals of Watertown,* 3 Mass. App. Ct. 251, 326 N.E.2d 915 (1975); and cases listed in Annot., 38 A.L.R.3d 167, 188 § 5[*b*].

Intervenors next argue that plaintiff used the wrong method of securing permission to begin an underground mine; that it should have followed the procedure for gaining a variance rather than a special use permit. The distinctions between variances and special use permits were the subject of discussion in *Weeks v. City of Bonner Springs,* 213 Kan. at 631-32:

"A special permit is distinguished from a variance in 3 Anderson [American Law of Zoning] § 15.02 as follows:

" 'A variance authorizes a landowner to establish or maintain a use which is prohibited by the zoning regulations. A special permit authorizes a use which is permitted by the zoning regulations, subject to the issuance of such a permit. Thus, a variance results in a deviation from the literal import of the ordinance; a special permit results in the establishment or maintenance of a use in the location and under the circumstances mandated by the ordinance. . . .' (pp. 86, 87.)"

Here, Article XVIII of the Leavenworth County zoning resolution states in relevant part:

"The County Commissioners of the County of Leavenworth, may, by special

permit, and after a public hearing, which shall be held as provided, in the last, paragraph in this article, authorize the location of any of the following buildings or uses in a district from which they are prohibited by this resolution:

"3. The extraction of raw materials such as rock, gravel, sand, clay and the like."

This specific authorization to allow mining more resembles the definition of a special use permit than that of a variance. Under the intervenors' proposed definition there could be no special uses, for if the uses had not been accepted by the zoning resolution then they were prohibited and would have to be changed by variance. The Leavenworth County resolution does not specifically prohibit mining, and thus a variance is not necessary.

Intervenors next argue that the county commissioners' decision to issue a special use permit was unreasonable. The scope of appellate review in reviewing reasonableness was recently set out in *Combined Investment Co. v. Board of Butler County Comm'rs,* 227 Kan. 17, 28, 605 P.2d 533 (1980):

"We discussed the rules governing the scope of judicial review of zoning matters in *Highway Oil* [219 Kan. 129, 547 P.2d 330 (1976)], and more recently in *Golden v. City of Overland Park,* 224 Kan. 591, 595-596, 584 P.2d 130 (1978). Concisely stated, the rules are these:

"(1) The local zoning authority, and not the court, has the right to prescribe, change or refuse to change, zoning.

"(2) The district court's power is limited to determining
   (a) the lawfulness of the action taken, and
   (b) the reasonableness of such action.

"(3) There is a presumption that the zoning authority acted reasonably.

"(4) The landowner has the burden of proving unreasonableness by a preponderance of the evidence.

"(5) A court may not substitute its judgment for that of the administrative body, and should not declare the action unreasonable unless clearly compelled to do so by the evidence.

"(6) Action is unreasonable when it is so arbitrary that it can be said it was taken without regard to the benefit or harm involved to the community at large, including all interested parties, and was so wide of the mark that its unreasonableness lies outside the realm of fair debate.

"(7) Whether action is reasonable or not is a question of law, to be determined upon the basis of the facts which were presented to the zoning authority.

"(8) An appellate court must make the same review of the zoning authority's action as did the district court."

Intervenors' chief complaint is that the district court should have believed Nathan Rash, their expert witness, concerning the potential danger of the mine and diminution in value of the sur-

rounding land. The trial judge heard evidence, viewed the premises and made detailed findings of fact to support his conclusion that the county commissioners' action was reasonable, and ample evidence is contained in the record to support the trial judge's findings as to reasonableness.

Affirmed.