No. 55,409

BOARD OF EDUCATION, UNIFIED SCHOOL DISTRICT No. 464, *Appellee,* v. JAMES D. PORTER and RUBY L. PORTER, *Appellants.*

(676 P.2d 84)

Opinion filed January 13, 1984.

*John C. Tillotson,* of Murray & Tillotson, Chartered, of Leavenworth, argued the cause and was on the brief for the appellants.

*H. Thomas Payne,* of Payne & Jones, Chartered, of Olathe, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is a landowners' appeal from the award in a condemnation action. Appellants were owners of a 1.38 acre tract of commercially zoned highway frontage property located in the City of Tonganoxie. For sixteen years prior to the condemnation, appellants operated a part of the liquid propane business on the property. A storage tank cradled on concrete piers was located there. The piers were four feet high and were buried approximately six feet beneath the surface of the ground. They were constructed of steel and concrete. Related equipment consisting of an electric motor, pump and various valves to load and unload propane was welded in place and attached to a concrete foundation and to an electric conduit on the site. The tank and related equipment, weighing approximately twelve to fourteen tons, were removed from the site after this litigation began.

In 1979, Unified School District No. 464 condemned a tract of land belonging to Alvin Shilling for school expansion. The Shilling land surrounds the Porter land taken in this proceeding. After the expansion onto the Shilling land by the school district, the Porter land was considered unsafe because of its proximity to the school and use as a propane facility. Condemnation or purchase of the Porter land nevertheless was impossible in 1979 for lack of resources. However, in 1980, the school district's finances were in better shape. On April 10, 1980, upon learning of the appellants' obtaining a building permit from the City to build a $50,000 building on the property, the superintendent talked to Mrs. Porter on the phone and inquired about the possibility of purchasing the property. The Porters did not respond to the inquiry. On April 11, the school board authorized immediate condemnation of the property. The appellants were advised of the board's action by telephone on that date. On April 14, 1980, the condemnation action was filed and notice was published on

April 16. The Porters were personally served with process on April 23, 1980, after they returned from a trip to Hawaii.

In the meantime, appellants had entered into a contract with Alvin Shilling on April 4, 1980, to erect a metal building on the location. Incidentally, the building to be placed on appellants' property was the same building Shilling had removed from the land the school district acquired from him by condemnation in 1979. Shilling started surveying the building site on April 10, and proceeded to pour cement foundation piers and assemble the building in spite of the school board's notice.

Appellants contend they had no notice of the school district's intentions to condemn their property until service of summons and that they were previously assured by school board member Bill New the school district had no such intentions.

On May 2, 1980, the court approved the condemnation petition and appointed appraisers, at which time the construction on the building was halted. Following the appointment of appraisers, the appellee filed a motion asking the court to instruct the appraisers to omit the partially completed building, tank, pump and equipment from appraisal. After a hearing the court sustained the motion. Appellants then filed a petition for a writ of mandamus with this court concerning the same issue. The petition was denied without a hearing on August 13, 1980.

In the meantime, the appraisers filed their report and the award was paid into the clerk of the court on August 4, 1980. Appellants appealed from the award. See K.S.A. 26-508.

Thereafter, appellee filed a motion to compel removal of the building, tank, pump and accessories from the site, which was resisted by appellants on the grounds it jeopardized their right to a trial de novo on the issues of valuation of the building and tank; would impose noncompensable costs on appellants; and there existed no compelling need for the removal of the tank and building pending the full trial of all the issues. The court ordered the tank and building removed.

In response to appellee's motion in limine, the trial court again excluded all evidence at trial pertaining to the partially completed building, propane tank and related equipment in determining the value of the taking.

At trial, the parties stipulated the value of the remaining real estate to be $27,150 and the court entered judgment for that

amount in favor of appellants. Appellants appeal the stipulated award under a reservation of rights.

Appellants initially argue the trial court erred in granting appellee's motion in limine to exclude evidence of the value of the partially completed building and propane tank and equipment.

In sustaining the motion, the trial court stated: "The decision to grant this . . . motion in limine is based upon both the doctrine of res judicata as well as a review of the facts . . . ."

Although there were decisions prior to trial involving the same facts by both the trial court and this court, the doctrine of res judicata is inapplicable. In the instant case, as in all eminent domain proceedings, the appraisers were directed to appraise appellants' condemned property. The trial court heard numerous motions pertaining to the exclusion of evidence of the value of the metal building and propane tank. Appellants persuaded the court to include the concrete foundation piers which support the propane tank in the appraisal, but all else was excluded. It was after these decisions appellants appealed to the trial court, pursuant to K.S.A. 26-508. This statute provides:

"If the plaintiff . . . is dissatisfied with the award of the appraisers, he may . . . after the filing of the appraisers' report, appeal from the award . . . . An appeal by the plaintiff . . . shall bring the issue of damages to all interests in the tract before the court for trial *de novo*."

Court rulings, prior to an appeal which provides a trial de novo, are not res judicata to the reconsideration of the issues at the de novo trial. Res judicata is applicable only when a case has been finally decided on the merits. See *Dennis v. Southeastern Kansas Gas Co.*, 227 Kan. 872, 878, 610 P.2d 627 (1980).

The appellants also sought a writ of mandamus from this court prior to their appeal to the district court. The appellants urged this court to order the trial judge to include the partially completed building and storage tank in its instructions to the appraisers. This court issued a ruling stating the writ was "considered and denied." Appellee argues this was a full adjudication of the issues on the merits. We have previously held: "Mandamus will be invoked only when an order of the trial court denies a litigant a right or privilege which exists as a matter of law and there is no remedy by appeal." *Nunn v. Morrison*, 227 Kan. 730, Syl. ¶ 1, 608 P.2d 1359 (1980). Mandamus is an extraordinary

remedy unavailable if there is an ordinary remedy. An appeal was available to the appellants in this case pursuant to K.S.A. 26-508. The denial of the writ was therefore based upon mandamus being an inappropriate remedy rather than upon the merits of the case. The doctrine of res judicata does not apply to this issue.

Appellants argue the motion in limine in this case was an improper use of the motion because the evidence excluded is not the type which is legally contemplated to be covered by a motion in limine.

We have recognized a motion in limine as a proper method of excluding evidence not at issue in a trial. See *State v. Quick,* 226 Kan. 308, 597 P.2d 1108 (1979), and *Febert v. Upland Mutual Ins. Co.,* 222 Kan. 197, 563 P.2d 467 (1977). Generally, the motion is seen as a manner by which to exclude inflammatory, prejudicial, immaterial and irrelevant evidence which if inquired about at trial, despite an objection, would so prejudice the side objecting as to preclude a fair trial. See 20 Am. Jur. Trials, pp. 447-49.

The trial court, prior to appraisal, had determined the building and storage tank were not attached to the realty and thus should not be included in the appraisal. The evidence is therefore irrelevant and immaterial to the value of the real estate, the issue at trial.

Additionally, we have long recognized a trial court has broad discretion in determining what evidence will be allowed in an eminent domain proceeding:

" 'It has been said that a condemnation trial is a sober inquiry into values, designed to strike a just balance between the economic interests of the public and those of the landowner, and that the trial of such a proceeding is essentially an informational inquisition in which the boundaries of the inquiry must be liberally intrusted to the sound discretion of the trial judge.' " *City of Manhattan v. Kent,* 228 Kan. 513, 519-20, 618 P.2d 1180 (1980), quoting 30 C.J.S., Eminent Domain § 286, p. 44.

An abuse of discretion exists only when no reasonable person would take the view adopted by the trial court. See *Wilson v. American Fidelity Ins. Co.,* 229 Kan. 416, 422, 625 P.2d 1117 (1981). Under the trial court's broad discretion and power to exclude or admit evidence, we hold the sustaining of the motion in limine was not an abuse of discretion.

Appellant next argues the trial court erred in instructing the

appraisers not to appraise the propane tank and equipment. This issue is a question of fact. In *Addis v. Bernardin, Inc.*, 226 Kan. 241, Syl. ¶ 2, 597 P.2d 250 (1979), we held:

"It is not the function of an appellate court to weigh conflicting evidence, pass on the credibility of witnesses or redetermine questions of fact and our only concern is with evidence which supports the trial court's findings, and not with evidence which might have supported contrary findings."

We are, therefore, limited on appeal to determining if there is evidence to support the findings of the trial court. The trial court ruled the storage tank and its accessories are personal property and properly irrelevant in determining the value of the condemned property. Appellants argue it was the intention of the landowners that the tank be a permanent fixture. Appellants cite cases from other jurisdictions holding gasoline tanks to be a part of the real estate. They are distinguishable, however, because there the storage tanks were buried underground and this not easily removed. Here the tank is above ground, unattached to the soil and easily moved.

We held in determining whether personal property had become a fixture and hence a part of the real estate:

"The tests to be applied in determining whether or not personal property becomes a fixture are: (1) Annexation to the realty; (2) adaption to the use of that part of the realty with which it is connected; (3) the intention of the party making the annexation to make the article a permanent annexation to the freehold." *Water Co. v. Irrigation Co.*, 64 Kan. 247, 252-53, 67 Pac. 462 (1902).

See also *Kansas City Millwright Co., Inc. v. Kalb*, 221 Kan. 658, 562 P.2d 65 (1977). The tank and equipment do not meet this test and thus are not fixtures to be considered in the eminent domain award as part of the real estate.

Appellants persist, however, citing authority for the proposition that machinery attached to a building must be considered a part of the real estate. See *Jackson v. State of New York*, 213 N.Y. 34, 36, 106 N.E. 758 (1914), where it was stated: "Severed from the building, such machinery commands only the prices of second-hand articles; attached to a going plant, it may produce an enhancement of value as great as it did when new." This case is also easily distinguishable. There the machinery was a part of the manufacturing plant system specially adapted to the particular process and in a sense attached to the realty. Here, the tank had none of those characteristics and is as usable at another location as on the land in question.

The trial court in this case, after considering diagrams, pictures, and testimony, determined the storage tank was not a fixture, despite appellants' insistence that it was intended to be permanent. The tank was not buried in the ground and was easily movable. We find ample evidence to support the trial court's finding.

Appellants next argue the court erred in holding the partially completed prefabricated metal building also to be personal property and thus not subject to condemnation. In 4 Nichols on Eminent Domain § 13.14 (3rd ed. rev. 1981), it is stated:

"When, however, a building is erected upon or moved to land which the owner knows is to be taken by eminent domain, with the sole purpose of enhancing the damages, and not in the natural, ordinary and legitimate use of such property, the building remains personal property and should not be considered in determining the value of the real estate. Where the owner so acts in bad faith, the intention of a permanent affixation is, of course, lacking." pp. 13-79-80.

The appellants argue the intent of the landowner in constructing a building is irrelevant in Kansas. In support of this the appellants cite *Briggs v. Comm'rs of Labette Co.*, 39 Kan. 90, 91-92, 17 Pac. 331 (1888), which states:

"It appears from the record that a certain cattle shed and corral had been erected by the plaintiffs, and that a short time thereafter steps were taken to have this road laid out. The evidence shows that the shed was completed about January, 1884, and the petition for the road was filed April 11, 1884. This shed and corral were located directly across the line on which this road was afterward laid out, the shed being 280 feet long and standing immediately on the line . . . . Evidence was also given to show that the shed and corral were erected by the plaintiffs at that particular point for the purpose of preventing a public road from being located on that section line and across that land . . . ."

*Briggs* is distinguishable from the instant case in two ways. Initially, the building in that case was completed in January, while the condemnation petition was filed in April. In the instant case construction of the building began at the same time the petition was filed. The building itself was never completed. Additionally, the landowner in *Briggs* sought to prevent the road from being built; here the landowners intended to enhance their damages, not prevent a taking. The holding in *Briggs* that the mere rumor of condemnation proceedings is not sufficient to stop a landowner from building is still valid.

The issue, then, is whether the appellants' construction of the building was accomplished without prior knowledge of the condemnation proceedings.

To determine whether a building was constructed solely to enhance a landowner's award, the courts have used a good faith standard. If a landowner erects a building on land which he *knows* is to be taken by eminent domain, he has acted in bad faith and the value of such building should not be considered in determining the value of the taking. If, however, a landowner constructs a building on land which "lies in the path of one of the many public improvements which are so often discussed and projected without being actually consummated for many years (if at all)," the owner has not acted in bad faith. 4 Nichols on Eminent Domain § 13.14, p. 13-76 (3rd ed. rev. 1981).

In the instant case, to determine whether the appellants acted in good faith, as they claim, this court must look to the facts. Both parties agree the superintendent of schools called Mrs. Porter on April 10, 1980. The parties disagree as to whether the superintendent told Mrs. Porter of the condemnation action during the April 10 phone call. The condemnation action was filed April 14, 1980. Up until that time only $60 worth of work had been completed on constructing the building. This consisted solely of surveying and staking the property. Public notice of the action appeared in the newspaper on April 16, 1980. On April 23, the appellants were personally served with process. On May 2, 1980, the court approved the condemnation. On May 7, the construction was stopped. The date of taking, as determined by the date appellee paid appellant for the property, was August 4, 1980.

The trial court ruled the partially completed building should not be considered in the landowners' award because the owner had knowledge of the condemnation and acted in bad faith in continuing construction after gaining that knowledge. "[T]he function of this court on appeal is to determine whether the findings [of the trial court] are supported by substantial competent evidence . . . ." *City of Council Grove v. Ossmann,* 219 Kan. 120, Syl. ¶ 1, 546 P.2d 1399 (1976). The facts, discussed above, indicate the landowner could have been found to have knowledge of the action as early as April 11, 1980. The latest possible date would have been April 23, 1980, when they received personal service. Regardless, construction was not halted

until May 7, 1980, two weeks after personal service of the action. This insistence on allowing construction, long after the condemnation action was at the stage of being merely discussed and projected, confirms the trial court had substantial competent evidence to hold the landowners acted in bad faith in constructing the building. We hold the trial court did not err in refusing to include the building's value as part of the appraisers' award.

The judgment of the trial court is affirmed.