No. 63,452

TODD E. PARKER, *Appellant,* v. VOLKSWAGENWERK AKTIENGESELLS-
CHAFT, and VOLKSWAGEN OF AMERICA, INC., *Appellees.*

(781 P.2d 1099)

Opinion filed November 1, 1989.

*Mark F. Anderson,* of Joseph, Robinson & Anderson, of Wichita, and *Arden J.*

*Bradshaw,* of Michaud, Hutton & Bradshaw, of Wichita, argued the cause and *Marlys A. Marshall,* of Michaud, Hutton & Bradshaw, of Wichita, was on the briefs for appellant.

*Alvin D. Herrington,* of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, argued the cause and *Timothy J. Finnerty,* of the same firm, was with him on the briefs for appellees.

The opinion of the court was delivered by

E. Newton Vickers, District Judge, Assigned: This is an interlocutory appeal brought as a result of the district court's disqualification of the law firm of Michaud, Hutton and Bradshaw (Michaud), attorneys for the plaintiff, Todd Parker.

## Facts:

Todd Parker filed a suit in May 1986 for damages he incurred in an automobile accident in 1984. Volkswagenwerk Aktiengesellschaft and Volkswagen of America (collectively, Volkswagen) were named as defendants. Parker was represented by Mark Hutton of Michaud, and Volkswagen retained the law firm of McDonald, Tinker, Skaer, Quinn & Herrington (McDonald, Tinker).

Randall Fisher is an attorney who started working for McDonald, Tinker in 1981, and became a director and shareholder of that professional association in 1985. Deena Bolton was hired as a legal assistant for McDonald, Tinker in 1985. In August 1986, Fisher and Bolton were married.

Randall Fisher left McDonald, Tinker in September 1987 when he was appointed as a judge for the 18th Judicial District. Deena Fisher continued working for McDonald, Tinker. In May of 1987, she was assigned as the legal assistant to work on the *Parker* case. Most of the *Parker* files were kept in her office.

Fisher served as a judge from October 1, 1987, to January 9, 1989. He was defeated in the primary election for the position and decided to return to private practice. Fisher received job offers from four law firms. On February 21, 1989, he contacted Debra Arnett of McDonald, Tinker seeking information as to possible conflicts or objections that might arise if he were to accept employment with any of the four law firms. McDonald, Tinker then contacted its clients, explaining the situation and soliciting their reactions.

One of the four law firms being considered by Fisher was the Michaud firm. On February 28, 1989, a representative of Volks-

wagen informed Alvin Herrington of McDonald, Tinker that if the Michaud firm hired Fisher, Volkswagen would not waive the conflict of interest, nor would it agree to Michaud's continued representation of Parker conditioned on the erection of a "Chinese Wall," in effect segregating the case to prevent Fisher's involvment. According to Herrington, he called Mark Hutton at the Michaud firm at 2:00 p.m. February 28 and informed him that Volkswagen would not consent to the continued representation of Parker by Michaud if Fisher were hired. Arnett also called Fisher later that afternoon and informed him of Volkswagen's decision. Fisher acknowledged that he received the phone call from Arnett, but testified that he had already accepted employment with Michaud just a few minutes prior to Arnett's call.

Arnett also wrote a letter to Fisher on March 1, 1989, in which she said that Volkswagen declined to waive the conflict and would not consent to the continued representation of adverse parties by the Michaud firm if Fisher were to accept employment there.

Fisher commenced employment with Michaud. The partners of Michaud wrote a letter to Arnett dated March 1, 1989, in which they informed her of their decision to hire Fisher and the steps Michaud would take to avoid conflict. The letter expressed the intention of the Michaud firm to segregate the files of any case with which Fisher had any contact while working for McDonald, Tinker. The letter, however, stated that since Fisher had had no contact with the *Parker* case while working at McDonald, Tinker, the *Parker* files would be left in Michaud's general filing area, although Fisher would be instructed to stay out of those files and avoid any discussion of the case with other members of the law firm.

A pretrial conference in the *Parker* case was held on March 7, 1989, at which time counsel for Volkswagen made an oral motion to disqualify Michaud, Hutton & Bradshaw as counsel for plaintiff. The court asked both sides to submit cases for its review the evening of March 7, and ordered a hearing on the motion for March 8.

A hearing on the motion to disqualify was held on March 8. Mr. and Mrs. Fisher testified. Mr. Fisher testified that while he was working at McDonald, Tinker there were weekly litigation meetings held each Monday morning at which time various cases

would be discussed. He said that he remembered when the *Parker* case came in and to whom it was assigned. The only discussion he recalled was that the case was filed by Michaud and that it was a product liability case arising from a rear-end collision. He also testified that particular problems or issues that had arisen in particular cases might be discussed in the litigation meetings but he did not recall any particular discussion of the *Parker* case. In cross-examining Fisher, Herrington stated he specifically remembered having a conversation with Fisher in June or July of 1986 concerning the applicability of comparative fault in a crashworthiness case in regard to the *Parker* case. Fisher said he did not recall the conversation.

Fisher testified that he knew that his wife was working on the *Parker* case, but he did not know specifically what she was doing on the case. He testified that she took work home with her on occasion. Mrs. Fisher testified that she did not recall ever discussing the merits of the *Parker* case with her husband or that she ever shared any information about the case with him. She testified that, after she was assigned to the *Parker* case, she worked on it on a daily basis and that her husband often came into her office to talk with her.

McDonald, Tinker produced a computer printout sheet entitled "Interim Fee & Expense Statement" which gave a summary of the hours that the firm worked on the *Parker* case. According to that sheet, Fisher had worked 9.6 hours on the case. Fisher testified that he did not recall working on the *Parker* case.

Upon further examination, Fisher recalled that he had done some research on breach of warranty in regard to another case for Volkswagen and that the research was also going to be used on the *Parker* case. He said that he did not gain any confidential information pertaining to *Parker* during the course of that research.

Judge Buchanan found that the Michaud firm should be disqualified from this case as a result of a conflict of interest arising from the employment of Fisher as an associate with Michaud. The court certified the order pursuant to K.S.A. 1988 Supp. 60-2102(b), finding that the motion for disqualification involved a question of law for which there is substantial ground for difference of opinion and that an immediate appeal from the decision would be in order. The pretrial conference had been

rescheduled to March 10, 1989, and the trial set for March 21, 1989. On March 9, Judge Rogg denied a motion for continuance for both the pretrial conference and the trial date. Michaud filed a petition in mandamus seeking to set aside the disqualification on March 9, 1989. This court stayed both the pretrial conference and the trial indefinitely pending the outcome of this action.

This case raises three issues for this court's review: (1) Is mandamus the appropriate means to resolve this dispute, (2) what are the standards for disqualification under these facts, and (3) did the trial court err in disqualifying plaintiff's counsel?

The cases concerning the appropriate means of appealing the disqualification of an attorney are in conflict.

In *Skahan v. Powell*, 8 Kan. App. 2d 204, 653 P.2d 1192 (1982), the district court disqualified Skahan, out-of-state counsel for plaintiff. The Court of Appeals held that the disqualification of an attorney is a final decision which can be appealed pursuant to K.S.A 60-2102(a)(4):

"The order of disqualification in this case conclusively determines the question of whether plaintiff is to have counsel of his choice or be forced to retain another. It resolves an important issue completely separate and apart from the merits of the action, and does not advance a determination on the merits. Finally, the order of disqualification will be effectively unreviewable if an appeal is delayed until final judgment is entered. If plaintiff is denied counsel of his choice at this stage, a situation is created which cannot be completely rectified. If plaintiff should lose on the merits, he would have an almost insurmountable burden to show his loss was due to the change of counsel. If he should prevail on the merits, the disqualified attorney has no remedy for his loss of reputation and fees." 8 Kan. App. 2d at 206-07.

The *Skahan* court found that mandamus was not a proper remedy for two reasons. The first was that mandamus is only available as a remedy where there is no remedy by appeal. The second was that disqualification of an out-of-state attorney is a matter of discretion for the trial judge and therefore not an appropriate issue for mandamus. The court also noted that K.S.A. 60-2102(a)(4) is virtually identical to 28 U.S.C. § 1291 (1982), better known as the "collateral order" doctrine.

In *Richardson-Merrell Inc. v. Koller*, 472 U.S. 424, 86 L. Ed. 2d 340, 105 S. Ct. 2757 (1985), the United States Supreme Court held that orders disqualifying counsel in civil cases are not collateral orders subject to appeal as final judgments under 28 U.S.C. § 1291. The Court, however, said:

"As we noted in *Firestone*, 'a party may seek to have the question certified for

interlocutory appellate review pursuant to 28 U.S.C. § 1292(b), . . . and, in the exceptional circumstances for which it was designed, a writ of mandamus from the court of appeals might be available.' " 472 U.S. at 435 (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378-379 n.13, 66 L. Ed. 2d 571, 101 S. Ct. 669 [1981]).

The Supreme Court cases interpreting the federal rules, therefore, contradict the *Skahan* opinion which interpreted the Kansas rules. In *Clemence v. Clemence*, 8 Kan. App. 2d 377, Syl., 658 P.2d 368 (1983), the Court of Appeals held: "An order refusing to disqualify counsel is interlocutory in nature and may be effectively reviewed on appeal from a final judgment. It is therefore not a 'final order' and is not appealable of right before entry of a final judgment in the case."

"Mandamus is an extraordinary remedy unavailable if there is an ordinary remedy such as an appeal." *U.S.D. No. 464 v. Porter*, 234 Kan. 690, Syl. ¶ 2, 676 P.2d 84 (1984). Respondent argues that mandamus is not appropriate in this action because the district court certified the order of disqualification for interlocutory appeal pursuant to K.S.A. 1988 Supp. 60-2102(b). Pursuant to that statute, the Court of Appeals *may* grant an appeal from such an order if an application is made within ten days of the order. This court, pursuant to K.S.A. 20-3018, may then hear that appeal.

Mandamus has not been considered an appropriate remedy where the error sought to be corrected is a matter of discretion for the trial court. *Wesley Medical Center v. Clark*, 234 Kan. 13, 16, 669 P.2d 209 (1983). In *E.E.O.C. v. Orson H. Gygi Co. Inc.*, 749 F.2d 620, 621 (10th Cir. 1984), the court said:

" 'Ordinarily the control of attorneys' conduct in trial litigation is within the supervisory powers of the trial judge, and his performance in this area is a matter of judicial discretion.' [*Redd v. Shell Oil Co.*, 518 F.2d 311, 314 (10th Cir. 1975), citing *Waters v. Western Co. of North America*, 436 F.2d 1072, 1073 (10th Cir. 1971). Except where a purely legal issue is involved, a district court's order of disqualification will be reversed only if the court has abused its discretion."

We agree that plaintiff should have requested an interlocutory appeal due to the district court's certification of the matter. The petition in mandamus, however, was filed within ten days of the order disqualifying the Michaud firm. The petition in mandamus also complied with the requirements of Supreme Court Rule 4.01 (1988 Kan. Ct. R. Annot. 18), regarding interlocutory appeals in civil cases, in that it stated the relevant facts, had annexed

thereto a copy of the order from which the appeal was sought, and briefly stated the controlling question of law and the basis for belief that an immediate appeal would materially advance the ultimate termination of the litigation.

In *Martin Marietta Aggregates v. Board of Leavenworth County Comm'rs*, 5 Kan. App. 2d 774, 625 P.2d 516, *rev. denied* 229 Kan. 670 (1981), the district court issued a writ of mandamus ordering the county commissioners to issue a special use permit to plaintiff. An appeal was taken by landowners, whom the trial court had allowed to intervene. The intervenors argued that mandamus was not a proper remedy to challenge the county commissioners' denial of a special use permit. The plaintiff filed the mandamus action on December 23, 1977, within 30 days of the commissioners' action. On March 6, 1978, the plaintiff filed an amended petition which added an appeal pursuant to K.S.A. 19-2926. The Court of Appeals said: "Given the liberality with which amendments are granted in modern practice and the fact that amendments that change the whole theory and statutory basis of the action are frequently allowed [citation omitted], we are of the opinion the amendment relates back to the date the cause of action was filed and is timely." 5 Kan. App. 2d at 780.

We have decided in this case to treat the petition in mandamus as an interlocutory appeal. The disqualification of plaintiff's counsel in this case raises the important considerations of a person's right to counsel of his or her choice, the right of attorneys to form new associations and take on new clients, and the right of a client to confidentiality and loyalty in his or her relationship with legal counsel. A determination of the standards to be applied for the disqualification of an attorney in this fact situation requires an interpretation of the Model Rules of Professional Conduct, which were recently adopted by this court. We, therefore, believe that this matter is appropriate for interlocutory appeal to this court.

The Model Rules of Professional Conduct, as adopted by the House of Delegates of the American Bar Association, were adopted with some modification not here relevant by the Kansas Supreme Court as the general standards of conduct and practice required of the legal profession in Kansas as of March 1, 1988. Supreme Court Rule 226 (1988 Kan. Ct. R. Annot. 184).

MRPC 1.10 (1988 Kan. Ct. R. Annot. 210) is the provision of the

model rules which is applicable in this case. MRPC 1.10 provides in part:

"(b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter.

. . . .

"(d) A disqualification prescribed by this Rule may be waived by the affected client under the conditions stated in Rule 1.7."

The Court also adopted the comments accompanying the model rules, to the extent that they are not inconsistent with Kansas statutory or case law. The Comment to Rule 1.10 says, in part:

"Confidentiality

"Preserving confidentiality is a question of access to information. Access to information, in turn, is essentially a question of fact in particular circumstances, aided by inferences, deductions or working presumptions that reasonably may be made about the way in which lawyers work together. A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients. In contrast, another lawyer may have access to the files of only a limited number of clients and participate in discussion of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not those of other clients.

"Application of paragraphs (b) and (c) depends on a situation's particular facts. In any such inquiry, the burden of proof should rest upon the firm whose disqualification is sought.

"Paragraphs (b) and (c) operate to disqualify the firm only when the lawyer involved has actual knowledge of information protected by Rules 1.6 and 1.9(b). Thus, if a lawyer while with one firm acquired no knowledge of information relating to a particular client of the firm, and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two clients conflict."

Under the Code of Professional Responsibility, Rule 225 (1988 Kan. Ct. R. Annot. 142), the traditional view was that an attorney's knowledge of his client's affairs is irrebuttably presumed to have been transmitted to other attorneys within the same law firm. Developments in the Law—Conflicts of Interest in the Legal Profession, 94 Harv. L. Rev. 1244, 1355 (1981). In recent years, many courts have relaxed the rule, allowing the presump-

tion of imputation of client confidences to be rebutted by evidence that the attorney who was materially involved in the case did not share any relevant information with his associates who were not working on the case. See *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 370 F. Supp. 581 (E.D.N.Y. 1973), *aff'd* 518 F.2d 751 (2d Cir. 1975).

The petitioners argue that the adoption of the model rules established a new standard in which the court must determine if the attorney whose disqualification is sought has actually acquired material information in the case.

In *Dewey v. R.J. Reynolds Tobacco Co.*, 109 N.J. 201, 536 A.2d 243 (1988), the Supreme Court of New Jersey discussed the changes in the law as a result of the adoption of the model rules by New Jersey in 1984 in a case where an attorney (Weiss) in a firm representing the plaintiff had represented the defendant (Brown & Williamson) when Weiss was a partner in the since-dissolved Rosen firm.

"Before our adoption of RPCs in 1984 the relevant case law and the Opinions of the Supreme Court Advisory Committee on Professional Ethics would have compelled the conclusion that Weiss represented Brown & Williamson while he was a partner at the Rosen firm. Those decisions were based not on the attorney's actual involvement with the former client's file, but rather on his or her mere affiliation with the adversary's firm. . . .

. . . .

"We conclude that under RPC 1.9 a mandatory disqualification is no longer required. We reach that result from RPC 1.9(b)'s incorporation of RPC 1.7(c)'s 'appearance of impropriety' analysis. Under that analysis the question to be resolved is whether 'an ordinary knowledgeable citizen acquainted with the facts' could conclude that Weiss represented Brown & Williamson within the intendment of RPC 1.9, and that Weiss's representation of Dewey in the same lawsuit would pose a 'substantial risk of disservice either to the public interest or the interest of one of the clients.' " 109 N.J. at 214-16.

The comments to MRPC 1.10 indicate that where lawyers move from one firm to the other, courts must balance the previous client's right of confidentiality, the right of having reasonable choice of legal counsel, and the right of lawyers to form new associations and take on new clients when leaving a previous association.

The memorandum order of the district court disqualifying plaintiff's counsel does not state the grounds for the disqualification, other than noting: "An evidentiary hearing was held and testimony was taken from witnesses concerning an alleged con-

flict of interest which arose as the result of the employment of Randall E. Fisher as an associate with Michaud, Hutton & Bradshaw." Where a motion to disqualify based on MRPC 1.10(b) has been filed, the district court must have a full hearing to determine whether the attorney in question acquired material and confidential information during the course of his former employment. To support a disqualification order, the district court must make a specific factual finding that the attorney had knowledge of material and confidential information. The model rules define knowledge as actual knowledge of the fact in question, but state that knowledge can be inferred from the circumstances.

In the case at bar, only Mr. and Mrs. Fisher testified. That testimony was not sufficient to make a determination as to whether Randall Fisher acquired material and confidential information during the course of his employment with McDonald, Tinker. The district court must determine motions for disqualification on a case-by-case basis, remembering that the burden of proof lies with the attorney or firm who is sought to be disqualified. If it is determined that the attorney gained material and confidential information during the course of his or her previous employment, then both the attorney and the firm with whom he or she is presently associated are disqualified.

### Screening Devices

The model rules thus reject, for lawyers practicing in the private sector at least, any thought that the "taint" of the incoming lawyer can be cured by screening him or her out of the affected client's matter, or by erecting a "Chinese Wall" or by imposing a "cone of silence." 1 Hazard and Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct, Rule 1.10, p. 191 (1988 Supp.) And see MRPC 1.11(a)(1), and (2) (1988 Kan. Ct. R. Annot. 213).

In the case at bar, which clearly falls under MRPC 1.10(b), we find that such screening devices are not provided for nor are they appropriate unless agreed to by all parties to the litigation.

We remand this matter to the district court for a full hearing on the issue of disqualification in accordance with the guidelines set forth in this opinion.

Vacated and remanded.

SIX, J., not participating.

McFARLAND, J., dissenting: A trial court must have broad discretion in this area in order to fulfill its obligation to preserve the integrity of the judicial system. Clients must be assured that their *"confidential communication"* with their attorneys will remain *confidential*. The majority opinion requires a hearing to explore whether or not material and confidential information was conveyed to Fisher. In order to prevail, the attorneys seeking disqualification will have to reveal what confidential communication was received and conveyed to Fisher and demonstrate that it is material to the case. This is a betrayal of the basic concept of attorney-client privilege.

The case involved is a major one involving a possible multimillion dollar judgment against the client on complex claims. It is inconceivable that the case has not been a high priority effort within the firm. Fisher's wife, apparently, worked virtually full time on the case for a considerable period of time with full access to all files. Interoffice discussion of the case among the firm's attorneys must be presumed in the circumstances herein if the appearance of impropriety is to be avoided. The district court, knowing the counsel and the history of the case, and under the totality of the circumstances, exercised its broad discretion herein. No abuse of that discretion has, in my opinion, been demonstrated. I would affirm the district court's disqualification order.

MILLER, C.J., joins the foregoing dissenting opinion.